IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) PHILIP SANDERS, an Individual and Husband and Next of Kin of BRENDA JEAN SANDERS, Deceased, <br><br>Plaintiff, <br><br>v. <br><br>(2) TURN KEY HEALTH CLINICS, a limited liability company, <br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. CIV-17-492-JED-CDL |

**CREEK COUNTY SHERIFF'S SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL INSPECTION OF THE CREEK COUNTY JAIL**

Because the relevance of the requested inspection is not apparent on its face, it is Plaintiff's burden to demonstrate its relevance. *See Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 663 (D. Kans. Jan. 23, 2003) (unpub) (this was previously provided at Dkt. 99-2). In that regard, for the first time in the Reply (Doc. 107), Plaintiff finally articulates the reasons that he wants to inspect the jail and the areas of the jail he wants to inspect. However, even in light of Plaintiff's belated explanation, it is still unclear how such an inspection would yield any evidence which would be relevant to either claims or defenses here.

For the first time, Plaintiff clarifies that he wishes to inspect L-Pod, all holding cells, all of the medical room, the detox tanks, the booking area, the sally port, and all avenues and hallways between these locations. (Dkt. 107, pp. 4-5, p. 6). With regard to the relevance of the inspection of these areas, Plaintiff asserts:

> Evidence has provided that: Brenda was incarcerated in "L-pod" for a time, then transferred by CCSO to the "detox tank", then transferred to a holding cell, and then to a different holding cell, all for medical reasons. Classica Godwin has

> testified in deposition that she was in L-pod with Brenda, and that all of the female inmates in L-pod complained about her smell from continued diarrhea. *CCSO placed Brenda into the detox tank, with no toilet, to remove her from general population so other inmates did not have to smell her and her continuous diarrhea.* Turn Key employees would come to her cell everyday multiple times a day to give her medications through a bean hole. Turn Key employees have denied that they could see any feces or smell any foul odor, particularly feces or diarrhea, when they opened the bean hole to give Brenda her medications. **CCSO's detention officers have testified in deposition that when they would escort the Turn Key employees around the cells to open up the bean holes, the smell of feces would rush out of the bean hole instantly upon opening. They further testified that they could continuously see feces and diarrhea everywhere around and on Brenda Sanders**.

(Dkt. 107, pp. 2-3) (emphasis added). Notably, Plaintiff provides ZERO evidence (i.e., no deposition testimony, no incident report, no sworn statements, etc.), to support *any* of these allegations-much less those which are emphasized by the undersigned which relate directly to CCSO staff's alleged actions. These are purely Plaintiff's unsupported allegations. Even so, it is unclear how an inspection of L-Pod, the detox tanks, all holding cells, and all hallways and avenues between these areas could possibly render any evidence regarding Decedent's alleged diarrhea, its smell, or its effect on other inmates more or less probable. Plaintiff does not explain how inspection of these areas could yield any evidence that would render its claims against Turn Key more or less probable. Nor is it clear how an inspection of the holding cell in which the Decedent was detained, much less all holding cells (including those in which she was not detained), could possibly resolve the apparent factual dispute regarding whether the smell of feces could be detected from the beanhole and whether feces and diarrhea was visible on and around the Decedent. Plaintiff simply does not explain how such an inspection could possibly lead to discovery of any relevant evidence.

> Plaintiff further asserts:
>
> Further, of even more importance, the holding cells, booking, and detox tank were in close relation to medical, where Turn Key employees would see patients and

2

> office in. ***Turn Key employees would have continuous sight and access to Brenda Sanders throughout their day and duties.*** Inspecting, photographing, and videoing the jail where Brenda Sanders spent the last weeks of her life would allow a jury to understand the neglect and deliberate indifference that Turn Key had towards Brenda Sanders.

(Dkt. 107, p. 3) (emphasis added).[1] Again, Plaintiff provides no evidence to support the allegation that "Turn Key employees would have continuous sight and access to Brenda Sanders throughout their day and duties." Plaintiff does not explain the relevance of the inspection or how it "would allow a jury to understand the neglect and deliberate indifference that Turn Key had towards Brenda Sanders." Apparently, it is already known to Plaintiff that "the holding cells, booking, and detox tank were in close relation to medical" such that an inspection of these areas would not yield additional evidence which would make Plaintiff's claims against Turn Key more or less probable. Regardless, any such evidence regarding the relative proximity of medical to these other areas of the jail could obviously be established by less intrusive means than the proposed inspection. In that regard, Fed. R. Civ. P. 45(d)(1) requires a party or attorney issuing or serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."

It is further unclear how an inspection of the medical office would likely make any factual issue regarding Turn Key's alleged deliberate indifference more or less probable. There is no allegation in this case that the Decedent was ever seen, examined, or treated in the medical office, and even if she had been, it is not clear how such an inspection could possibly render any factual issue regarding Turn Key's alleged deliberate indifference more or less probable. Plaintiff

---

[1] Plaintiff requests that his representatives be allowed to make audio and video recordings and take photos of all the listed areas, excluding L-Pod and hallways. Plaintiff has failed to explain the relevance of recordings/photos or his need for them. Plaintiff's statement that such evidence "would allow a jury to understand the neglect and deliberate indifference that Turn Key had towards Brenda Sanders" (Dkt. 107, p. 3) is a conclusory assertion. Precisely how they would help the jury understand the alleged deliberate indifference by Turn Key is left unexplained.

certainly has not explained how that could possibly be. Moreover, Plaintiff wholly fails to explain why inspection of the booking area, the sally port, or all the hallways and avenues between all of the areas they wish to inspect would have any significance whatsoever to Plaintiff's claims.[2]

In sum, Plaintiff has failed to shoulder his burden to demonstrate the relevance of the proposed inspection of any of these areas of the jail. It is unclear how the proposed inspection would make any factual issue regarding Turn Key's alleged deliberate indifference more or less probable. Nor does Plaintiff explain how the proposed inspection or any video or photos taken during such an inspection "would allow a jury to understand the neglect and deliberate indifference that Turn Key had towards Brenda Sanders." (Dkt. 107, p. 3). Rather, Plaintiff simply appears to want to video and photograph these portions of the jail to show to the jury in order to garner sympathy for the Decedent. That is not a proper purpose of an inspection.

In the Sheriff's Response, he discussed the Goodyear case for the proposition that courts are required to balance a subpoenaing party's need for the requested discovery against the burden imposed on the person ordered to respond to the subpoena and, if the objecting party can demonstrate that the requested discovery is of such marginal relevance that it is outweighed by the burden on the responding party, then the discovery should not be allowed. *See Goodyear*, 211 F.R.D. at 662-63; *Doe v. MacLeod*, No. 18-3191, 2020 WL 2039214, at *3 (C.D. Ill. Apr. 28, 2020) (unpub).[3] In his Reply, Plaintiff takes exception to the CCSO's citation to *Goodyear* with regard to this issue, asserting that "[t]he *Goodyear* court was deciding subpoena issue of documents and listed other factors related to producing documents. That is not the case year [*sic*]. Plaintiff served a subpoena to inspect upon CCSO." (Dkt. 107, p. 3). However, Plaintiff's

---

[2]Plaintiff gives no further reasons for the requested inspection.
[3]A copy of this unpublished Opinion was previously provided at Dkt. 99-4.

4

argument in this regard is merely a distinction without a difference. The CCSO relies on *Goodyear* in this regard for a general proposition of law which applies whether the subpoena is for production of documents or for inspection. In either case, the reviewing court must balance the subpoenaing party's need for the requested discovery against the burden imposed on the person ordered to respond to the subpoena. Plaintiff does not cite any authority to the contrary.

Plaintiff asserts that "CCSO likely will need to escort us around, but CCSO has not mentioned any other burdens." (Dkt. 107, p. 3). However, this a misstatement. In its Response and Objection, the CCSO clearly and expressly outlined the extreme burden on it that compliance with the subpoena would entail.

Finally, Plaintiff further suggests in his Reply that the parties can take preventative measures to mitigate or eliminate potential COVID-19 exposure. (Dkt. 107, pp. 4 and 6). However, nowhere in his Reply brief does Plaintiff outline any such measures.[4] While the measures for mitigating potential COVID-19 exposure are well known (*i.e.*, wearing of surgical masks, social distancing, health screening), the undersigned knows of no practical method whereby potential exposure to the disease can be *eliminated* entirely. Given the dire consequences of such exposure to the CCSO, and to jail inmates and staff, the burden on the CCSO in complying with the subpoena clearly outweighs whatever marginal relevance the proposed inspection may have on this case, even when the availability of mitigating measures are taken into account.

---

[4] To the contrary, at least one of Plaintiff's requests belies his supposed concern regarding such mitigation. One would think that, if Plaintiff were serious about mitigating the potential danger of COVID-19 exposure at the jail posed by the proposed inspection, he would at least agree that the number of persons participating therein be limited as much as possible. Yet, Plaintiff requests that at least two representatives for each party be allowed to participate in the inspection. (Dkt. 107, p. 6). He gives no explanation for this request. Plaintiff's request in this regard should be denied, if the Court should decide to allow the inspection.

Respectfully submitted,

s/ Ambre C. Gooch
Ambre C. Gooch, OBA No. 16586
COLLINS, ZORN, & WAGNER, P.C.
429 N.E. 50th Street, Second Floor
Oklahoma City, OK  73105-1815
Telephone: (405) 524-2070
Facsimile: (405) 524-2078
E-mail: acg@czwlaw.com

ATTORNEY FOR CREEK COUNTY
SHERIFF BRET BOWLING

**CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2020, I electronically transmitted this filing to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Charles L. Richardson – via electronic mail at: clr@rrbok.com
Colton L. Richardson – via electronic mail at: colton@rrbok.com
RICHARDSON, RICHARDSON BOUDREAUX, PLLC
7447 S. Lewis Avenue
Tulsa, OK 74136
*Attorneys for Plaintiff*

Sean P. Snider – via electronic mail at: ssnider@johnsonhanan.com
Paulina Thompson – pthompson@johnsonhanan.com
JOHNSON HANAN AND VOSLER
9801 Broadway Avenue
Oklahoma City, OK 73114
*Attorney for Defendant Turn Key Health Clinics, LLC*

s/ Ambre C. Gooch
Ambre C. Gooch