IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PHILIP SANDERS, and Individual and Husband and Next of Kin of BRENDA JEAN SANDERS, deceased,<br><br>        Plaintiff,<br><br>vs.<br><br>TURN KEY HEALTH CLINICS, a limited liability company,<br><br>        Defendant. | Case No.: 17-CV-492-JED-CDL |

**<u>OPINION & ORDER</u>**

Before the Court is Plaintiff Phillip Sanders's Objections to Magistrate's Opinion and Order (Doc. 97) and Plaintiff's Motion to Extend Scheduling Order by 120 Days, Including the Discovery Cutoff (Doc. 165).

### I.    Background

Defendant Turn Key Health Clinic, LLC, is a health care provider for the Creek County Jail where Ms. Sanders was incarcerated from October 17, 2016, to November 20, 2016, until she was transferred to the hospital after suffering symptoms of sepsis. She died on November 21, 2016. Plaintiff, Ms. Sanders's widowed husband, sued Defendant under 42 U.S.C. § 1983, alleging Defendant was deliberately indifferent to the medical needs of Ms. Sanders.

Plaintiff issued a notice of deposition, pursuant to Fed. R. Civ. P. 30(b)(6), on January 16, 2020, to take the deposition of a corporate representative of Defendant. The Deposition Notice listed 19 topics Plaintiff wanted to explore with Defendant's corporate representative. (Doc. 97-1 at 7-8). Two of the topics Plaintiff sought to explore were "[p]rofits and losses data from 2014 to present" and "[r]evenue generated by Turn Key in the last 10 years." (*Id.* at 7). Believing Plaintiff's

list of topics was too broad, Defendant filed a Motion for Protective Order on April 30, 2020. (Doc. 78). On July 16, 2020, United States Magistrate Judge Frank H. McCarthy entered an order granting Defendant's Protective Order in part. Of note, Judge McCarthy found that both inquiries into Turn Key's profits and losses and its revenue for the last 10 years were irrelevant and granted the Protective Order as to those two topics. (Doc. 85 at 2, 5).

On July 29, 2020, Plaintiff filed an Objection to Magistrate's Opinion and Order (Doc. 97), where he argued that Judge McCarthy erred by not allowing Plaintiff to inquire into Defendant's revenue because Plaintiff is seeking punitive damages. Defendant responded by stating that "merely pleading punitive damages is not sufficient to warrant disclosure of a defendant's confidential financial information." (Doc. 100 at 3 (quoting *Okla. ex rel. Edmonson v. Tyson Foods*, Case No. 05-CV-329, 2009 WL 10271831 n.3 (N.D. Okla. Mar. 13, 2009))).

Because the Court has yet to rule on Plaintiff's Objection, Plaintiff has yet to take the deposition of Defendant's corporate representative—the parties believed it would be more efficient to let the Court rule on the scope of the permissible topics. The Discovery Cutoff deadline expired on April 8, 2021. (Doc. 152). On May 31, 2021, Plaintiff filed a Motion to Extend Scheduling Order by 120 Days (Doc. 165), wherein Plaintiff asked that the already expired Discovery Cutoff and the remaining unexpired deadlines be extended by 120 days. As to the Discovery Cutoff, Plaintiff sent a round of discovery requests to Defendant on March 21, 2021, after it deposed an employee of Defendant's. Defendant did not respond to those requests because the requests were not filed at least 30 days before the April 8 deadline. Plaintiff asks the Court to extend the Discovery Cutoff to force Defendant to answer Plaintiff's last round of discovery, as well as allow Plaintiff to send additional written discovery to Defendant after it deposes Defendant's corporate representative.

2

In Defendant's Response (Doc. 166), Defendant does not oppose the extending of the Scheduling Order for all unexpired deadlines, nor does it oppose the extension of the Discovery Cutoff for the deposition of its corporate representative. But it does oppose the extension of the Discovery Cutoff for all other discovery because "Plaintiff has had ample opportunity to conduct discovery in this case, and re-opening discovery to all matters in this case would unduly burden the Defendant to continue to respond to continuous waves of written discovery requests." (Doc. 166 at 3).

On June 8, 2021, the Court struck all the unexpired deadlines in the Scheduling Order and notified the parties that those deadlines would be reset at a later date. (Doc. 169).

## II. Discussion

### A. Objection to Judge McCarthy's Opinion & Order

Magistrate judges may issue orders as to non-dispositive pretrial matters, subject to reconsideration by the district courts only where it has been shown that the magistrate judge's order is "clearly erroneous or contrary to law." *See* 28 U.S.C. § 636(b)(1)(A); *see also First Union Mortgage Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000). The clearly erroneous standard means that "the district court must affirm the magistrate judge's order unless the district court has the definite and firm conviction from all the evidence that error had occurred." *Ocelot Oil Corp. v. Sparrow Industries*, 847 F.2d 1458, 1461-62 (10th Cir. 1988).

Here, Judge McCarthy found that Plaintiff could not inquire into the "profits and losses of Defendant from 2014 to present," nor could he inquire into Defendant's "current financial condition" because neither were "relevant to the question of whether the medical care provided to Ms. Sanders was appropriate or any other matter at issue." (Doc. 85 at 2). Further, Judge McCarthy stated, "[e]ven if Turn Key's motive to make a profit were relevant, Plaintiff can establish Turn

3

Key's profit motive without discovery into the actual numbers." (*Id.*). In Plaintiff's Objection, he argues that Judge McCarthy failed to evaluate the relevance of Defendant's financial condition as to Plaintiff's claim for punitive damages.

Rule 30(b)(6) allows a party in a lawsuit to notice or subpoena a corporation to sit for a deposition. This is an extremely powerful tool in litigation because "[i]n a Rule 30(b)(6) deposition, there is no distinction between the corporate representative and the corporation. 'The Rule 30(b)(6) designee does not give his personal opinion. Rather, he presents the corporation's "position" on the topic.' The designee testifies on behalf of the corporation and thus holds it accountable." *Sprint Commc'ns Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006) (quoting *Hyde v. Stanley Tools*, 107 F. Supp. 2d 992, 993 (E.D. La. 2000)).

A party for whom a deposition is sought can move for a protective order to protect them from annoyance, embarrassment, oppression, or undue burden or expense, and the court may, among other things "forbid[] inquiry into certain matters, or limit[] the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). Further, "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *Id.* 26(b)(2)(C)(i).

The Court finds that allowing Plaintiff to inquire into Defendant's "profits and losses of Defendant from 2014 to present," or its "current financial condition," would unduly burden Defendant, as it could be obtained from some other source that is more convenient, less burdensome, and less expensive. To be sure, Defendant's current financial condition is relevant in this case because Plaintiff has pled a claim for punitive damages. *See* (Doc. 23, ¶ 53-55).

4

> Where punitive damages are properly pled, the "wealth" of the defendant is a relevant area of inquiry because the purpose of punitive damages is to punish past conduct and deter similar conduct in the future and the "degree of punishment or deterrence resulting from a judgment is to some extent in proportion to the means of a guilty person."

*Tyson Foods*, 2009 WL 10271831 at *3 (quoting Restatement (Second) of Torts § 908 comment (e) (1979)). In this district, when punitive damages are at issue, courts have routinely held that discovery of the defendant's wealth should be limited to the current year's balance sheet. *See, e.g.*, *Id.* at *5 (directing defendant to produce "the balance sheet from its last audited financial statement and its most current balance sheet" in case involving a claim for punitive damages); *Cardtoons, LLC v. Major League Baseball Players Association,* 199 F.R.D. 677, 686 (N.D.Okla.2001) (rejecting request for seven years' worth of financial documents and directing defendant to produce its "year 2000 balance sheets" in case involving a claim for punitive damages); *Hightower v. Heritage Acad. of Tulsa, Inc.*, No. 07-CV-602-GKF-FHM, 2008 WL 2937227, at *1 (N.D. Okla. July 29, 2008) (limiting discovery to "Defendant's balance sheet for 2008 and its net worth for 2008" in case involving a claim for punitive damages); *Toussaint-Hill v. Montereau in Warren Woods*, No. 07-CV-179 GKF/SAJ, 2007 WL 3231720, at *1 (N.D. Okla. Oct. 29, 2007) (directing defendant to produce "one balance sheet showing net worth for the year 2006" in case involving a claim for punitive damages).

Here, rather than asking Defendant to produce one year's balance sheet, Plaintiff wants Defendant to produce a witness who can speak on its behalf and question that person about Defendant's financial condition. But Plaintiff has not provided a reason, and the Court cannot think of one itself, for why he needs an entire deposition to inquire into Defendant's financial condition when the same could be accomplished through the production of the current year's balance sheet. Thus, the Court affirms Judge McCarthy's order (Doc. 85) and finds that Plaintiff can inquire into

Defendant's financial condition in a less burdensome and less expensive manner—through the document production of Defendant's 2020 balance sheet.

The Court also notes that Plaintiff argues that he is entitled to information regarding Defendant's profits and losses from 2014 to present. (Doc. 97-1 at 7). Plaintiff makes an interesting statutory construction argument for why he should receive multiple years of Defendant's financial records, but ultimately, Plaintiff's argument falls short.

Under Oklahoma law, juries can consider a range of factors in determining punitive damages, two of which are "[t]he profitability of the misconduct to the defendant," and "[t]he financial condition of the defendant." Okla. Stat. tit. 23, § 9.1(A)(2), (7). From this language, Plaintiff claims that the "financial condition" factor refers to the present financial condition and that its "purpose is to determine a punishment for a defendant based on their financial condition now." (Doc. 97 at 5). The Court agrees with Plaintiff on this point. However, Plaintiff further argues that the "profitability" factor refers to how much money a defendant made from their misconduct in the past and that the "only way to tell how much money a Defendant made from his misconduct is to compare the financial information for the year the event happened to the years preceding and following." (*Id*.). The Court finds this argument illogical.

Defendant provides medical services to numerous prisons across multiple states. Plaintiff has only alleged that Defendant provided grossly negligent care to one person on one occasion. There is simply nothing to glean from comparing Defendant's financial information from the year this accident happened to the years preceding and following it. For instance, let's pretend Defendant had a net worth of $5 million in 2015, $5.5 million in 2016, and $4.8 million in 2017, 2018, 2019, and 2020. What does Plaintiff think this information proves—that Defendant made $500,000 from providing grossly negligent care to Ms. Sanders in 2016? That is obviously absurd.

6

There are hundreds of unrelated reasons why a company's assets and liabilities would change year over year. In some circumstances it might be relevant for a Plaintiff to discover numerous years of financial information to determine how a company benefitted from a long-running illicit scheme, but Plaintiff has not pled that here.

It is also the Court's understanding that Defendant intends to file a dispositive motion on the issue of punitive damages. (Doc. 100 at 4). And "where a punitive damage claim appears to have little merit, it would be appropriate to delay disclosure of financial information until the claim is tested by dispositive motion." *Tyson Foods*, 2009 WL 10271831 at *3 n.3. While the Court is not presuming that Plaintiff's claim for punitive damages has "little merit," the Court does believe it makes sense to delay the production of Defendant's balance sheet until after the Court has ruled on Defendant's dispositive motion. Plaintiff will not be prejudiced by the delay, and it would avoid the possibility that Defendant would disclose sensitive financial information that the Court might ultimately find unnecessary. Thus, "[s]hould the court allow the claim for punitive damages to proceed, Defendant is directed to produce to Plaintiff one balance sheet showing the net worth for the year [2020] within 20 days of the court's order allowing Plaintiff's punitive damages claim to proceed." *Toussaint-Hill*, 2007 WL 3231720, at *1.

**B. Extension of Scheduling Order**

As recounted above, both Plaintiff and Defendant wish to extend all unexpired deadlines by 120 days. The two parties also agree that the April 8, 2021 Discovery Cutoff should be extended so Plaintiff can take the deposition of Defendant's corporate representative—as the two parties have been waiting for this Court to rule on Plaintiff's Objection to Judge McCarthy's Discovery Order before proceeding with the deposition. Where the two parties diverge is whether the

Discovery Cutoff should be extended 120 days for all discovery. Plaintiff requests that discovery be reopened; Defendant requests it remain closed.

Once issued, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Additionally, the Court's Local Rules provide that the party seeking extension must state "specific reasons for such requested extension, to include an explanation why the act was not done within the originally allotted time." LCvR7-1(g).

The Tenth Circuit has, on more than one occasion, explained that the focus of the good-cause inquiry in the context of an extension under Rule 16 is the diligence (or absence thereof) shown by the moving party. *See Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1020 (10th Cir. 2018) ("In practice, [the Rule 16(b)(4) ] standard requires the movant to show the 'scheduling deadlines cannot be met despite [the movant's] diligent efforts.'" (alterations in original) (quoting *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)); *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019) ("'[G]ood cause' is likely to be found when the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." (quoting James Wm. Moore, Moore's Federal Practice - Civil § 16.14[1][b] (3d ed. 2019)).

A district court has broad discretion in managing the pretrial schedule, but the Tenth Circuit has recognized that a scheduling order can have an outcome-determinative effect on the case and "total inflexibility is undesirable." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011) (quoting *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir.1997). A scheduling order which results in the exclusion of evidence is, moreover, "a drastic sanction." *Id.* (quoting *Summers,* 132 F.3d at 604).

> Here, Plaintiff's attempt at providing good cause consists of the following:
>
> 8. Toward the beginning of the year, Ms. Thompson, attorney for Defendant, left the firm representing Defendant, and new counsel entered. At that time, parties had some depositions schedule[d]. Those depositions had to be rescheduled. With the change in counsel, parties had difficulty in scheduling depositions with at least one month left before the discovery cutoff. For example, Plaintiff deposed Nicole Cobb, employee of Defendant, on March 18, 2021. Discovery cutoff was on April 8, 2021. Plaintiff sent discovery to Defendant on or around March 21, 2021, for the sole purpose of discovering documents and information that were first mentioned in the deposition of Nicole Cobb. Because of the deadline, Defendant objected that the responses were due after the discovery cutoff.
>
> 9. Plaintiff believes that it would be appropriate and just to extend the discovery cutoff as well to accompany discovery of newly uncovered information and documents. This would also allow discovery of information and documents that arise from the corporate representative (and Dr. William Cooper as an individual) to be inquired to with written discovery following the deposition.

(Doc. 165 at 2). As a preliminary matter, Plaintiff only attempts to provide good cause for extending the Discovery Cutoff as it relates to two items: (1) written discovery following the March 18, 2021 deposition of Nicole Cobb, and (2) written discovery following the not-yet-taken deposition of Defendant's corporate representative. Thus, the Court will assume that Plaintiff does not seek the reopening of discovery into any other matter and will limit its analysis accordingly.

As to written discovery following the deposition of Nicole Cobb, the Court finds that Plaintiff has not provided good cause for extending the Discovery Cutoff for such discovery. Plaintiff issued written discovery to Defendant on March 21, 2021, and the Discovery Cutoff expired on April 8, 2021. It is a well-known fact of litigation that "[d]iscovery requests must be served at least 30 days before discovery cutoff, because a party has 30 days to respond to such requests. requests." *Bridges v. Wilson*, No. 15-CV-126-GKF-PJC, 2016 WL 11720350, at *2 (N.D. Okla. Oct. 7, 2016) (citing *Thomas v. Pacificorp*, 324 F.3d 1176, 1179 (10th Cir. 2003)).

Plaintiff recounts, with few specifics, how Defendant changing attorneys at the beginning of the year disrupted the parties' deposition schedule. But Plaintiff does not need Defendant's

9

cooperation in scheduling a deposition. Plaintiff could have noticed Nicole Cobb for a deposition in early March, thus assuring him ample time to issue written discovery after the deposition. Of course, parties traditionally work with each other regarding deposition scheduling, but when deadlines are approaching, a party can notice a deponent and then work out scheduling and concessions after the fact, e.g., Plaintiff could have agreed to Defendant's preferred deposition date if Defendant agreed to respond to his written discovery after the Discovery Cutoff. Further, Plaintiff does not address what relevant evidence might be produced from its last round of written discovery, so the Court is unable to balance Plaintiff's need for the evidence. Thus, the Court denies to extend the Discovery Cutoff as to Plaintiff's written discovery issued on March 21, 2021.

As to the written discovery following the deposition of Defendant's corporate representative, the Court finds good cause for extending the Discovery Cutoff for Plaintiff. Plaintiff objected to Judge McCarthy's Discovery Order on July 27, 2020, well before the Discovery Cutoff deadline, and the parties, for good reason, decided to delay that deposition until this Court ruled on Plaintiff's Objection. If the Court would have timely ruled on Plaintiff's Objection, Plaintiff would have been able to take the deposition of Defendant's corporate representative and issue written discovery following that deposition well within the April 8, 2021, deadline. Thus, the Court will extend the Discovery Cutoff to allow Plaintiff to issue written discovery following his deposition of Defendant's corporate representative. To limit the burden on Defendant, the Court will restrict Plaintiff's written discovery to five interrogatories and five requests for production. If Plaintiff needs more than this, it must provide the Court with good cause for why. Further, Plaintiff should not view this as carte blanche to explore any anything he pleases. The written discovery is limited to matters that were previously unknown to Plaintiff prior to the 30(b)(6) deposition.

### III. Conclusion

For the reasons discussed above, Plaintiff Phillip Sanders's Objections to Magistrate's Opinion and Order (Doc. 97) is **denied**. The Court finds that Plaintiff's request to depose Defendant's corporate representative regarding its financial condition can be obtained through the production of Defendant's 2020 balance sheet, which will be "more convenient, less burdensome, [and] less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Thus, the Court orders that, if Plaintiff's claim for punitive damages survives Defendant's forthcoming dispositive motion on this issue, "Defendant is directed to produce to Plaintiff one balance sheet showing the net worth for the year [2020] within 20 days of the court's order allowing Plaintiff's punitive damages claim to proceed." *Toussaint-Hill*, 2007 WL 3231720, at *1.

Further, for the reasons discussed above, Plaintiff's Motion to Extend Scheduling Order by 120 Days, Including the Discovery Cutoff (Doc. 165) is **granted** in part and **denied** in part. The Court **grants** Plaintiff's Motion to Extend all the unexpired Scheduling Order deadlines 120 days, and the Court will enter an Amended Scheduling Order immediately following the entry of this order. The Court also **grants** Plaintiff's Motion to Extend the Discovery Cutoff as it relates to taking the deposition of Defendant's corporate representative. The Court will further allow Plaintiff to issue written discovery to Defendant within 14 days of the completion of the 30(b)(6) deposition. Plaintiff is allowed five interrogatories and five requests for production. If Plaintiff needs more, he must provide the Court with good cause for why. Plaintiff can only use this written discovery to discover information previously unknown to him prior to the 30(b)(6) deposition. Finally, the Court **denies** Plaintiff's Motion to Extend the Discovery Cutoff for all other discovery.

SO ORDERED this 14th day of June, 2021.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT