Caution
As of: June 1, 2021 9:04 PM Z

# Donathan v. Orthopaedic & Sports Med. Clinic, PLLC

United States District Court for the Eastern District of Tennessee

October 26, 2009, Decided; October 26, 2009, Filed

Case No. 4:07-cv-18

**Reporter**
2009 U.S. Dist. LEXIS 99557 *; 2009 WL 3584263

BETTE F. DONATHAN and BEN D. DONATHAN, Plaintiffs, v. THE ORTHOPAEDIC & SPORTS MEDICINE CLINIC, PLLC; DELORES K. WHITE, D.O.; CUMBERLAND HEALTHCARE GROUP, PLLC: CUMBERLAND HEALTHCARE GROUP, PLLC d/b/a WINCHESTER ANESTHESIA GROUP; WINCHESTER ANESTHESIA GROUP; RONALD GORDON, M.D.; KYLE A. KLEINPETER, D.O.; FAITH E. NANCE, CRNA; CHRISTOPHER A. WILL, CRNA, ELIZABETH REIMERS, M.D.; SOUTHERN TENNESSEE MEDICAL CENTER, LLC; SOUTHERN TENNESSEE MEDICAL CENTER, LLC d/b/a SOUTHERN TENNESSEE MEDICAL CENTER; and SOUTHERN TENNESSEE MEDICAL CENTER; Defendants.

## Core Terms

motion in limine, in limine, expert testimony, contends, standard of care, reserved ruling, parties, patient, admissibility of evidence, epidural, injuries, requests, instant motion, oppose, evidentiary objection, practices, reliable, course of a trial, trier of fact, inadmissible, malpractice, anesthesia, exclude evidence, catheters, premature, witnesses, dispensation, prejudicial, opining, chart

**Counsel:** [*1] For Bette F Donathan, Ben D Donathan, Plaintiffs: Daniel L Clayton, LEAD ATTORNEY, PRO HAC VICE, Kinnard, Clayton & Beveridge, Nashville, TN; Randall L Kinnard, LEAD ATTORNEY, Kinnard, Clayton & Beveridge, Nashville, TN.

For The Orthopaedic & Sports Medicine Clinic, PLLC, Delores K White, D.O., Defendants: Michael A Geracioti, LEAD ATTORNEY, Levine, Orr & Geracioti, Nashville, TN.

For Internal Medicine Specialists of Middle Tennessee, PC, James G Stensby, M.D., Defendants: Steven M Roderick, LEAD ATTORNEY, Richard A Smith, Stacy L Archer, Robinson, Smith & Wells, Chattanooga, TN.

For Cumberland Healthcare Group, PLLC, doing business as Winchester Anesthesia Group, Cumberland Healthcare Group, PLLC, Elizabeth Reimers, M.D., Christopher A Will, CRNA, Faith E Nance, CRNA, Kyle A Kleinpeter, D.O., Ronald Gordon, M.D., Defendants: Arthur P Brock, Spears, Moore, Rebman & Williams, Chattanooga, TN.

For Southern Tennessee Medical Center LLC, Southern Tennessee Medical Center LLC, doing business as Southern Tennessee Medical Center, Defendants: Carol Davis Crow, Thomas A Wiseman, III, LEAD ATTORNEYS, Kimberly G Silvus, PRO HAC VICE, Gideon & Wiseman, Nashville, TN.

For Southern Tennessee Medical [*2] Center, Defendant: Carol Davis Crow, Chris J Tardio, Thomas A Wiseman, III, LEAD ATTORNEYS, Kimberly G Silvus, PRO HAC VICE, Gideon & Wiseman, Nashville, TN.

**Judges:** HARRY S. MATTICE, JR., UNITED STATES DISTRICT JUDGE.

**Opinion by:** HARRY S. MATTICE, JR.

## Opinion

EXHIBIT 7

Colton Richardson

## MEMORANDUM AND ORDER

The following motions in limine are presently before the Court: (1) Plaintiffs' Motions in Limine (Court Docs. 264-271), Defendant Cumberland Healthcare Group, Winchester Anesthesia Group, Ronald Gordon MD., Kyle Kleinpeter, D.O., Faith E. Nance, CRNA, Christopher A. Will CRNA, and Elizabeth Reimers, M.D.'s (hereinafter collectively "Cumberland Defendants") Motions in Limine (Court Docs. 257-262), Defendant Elizabeth Reimers' Motion in Limine (Court Doc. 263), Defendant Southern Tennessee Medical Center's (hereinafter "STMC") Motions in Limine (Court Doc. 256), Defendant The Orthopaedic & Sports Medicine Clinic, PLLC (hereinafter "OSMC") Motions in Limine (Court Docs. 243-254).

For the reasons explained below, the Court will **GRANT** in part, **DENY** in part, and **RESERVE RULING** in part on the admissibility of the evidence at issue Plaintiffs' Motions in Limine. (Court Doc. 264-271). The Court will **GRANT** in part, **DENY** in part, and **RESERVE RULING** [*3] in part on the admissibility of the evidence at issue the Cumberland Defendants' Motions in Limine. (Court Doc. 257-262). The Court will **RESERVE RULING** on the admissibility of the evidence at issue in Defendant Elizabeth Reimers, M.D.'s Motion in Limine. (Court Doc. 263.) The Court will **GRANT** in part, **DENY** in part, and **RESERVE RULING** in part on the admissibility of the evidence at issue in Defendant STMC's Motions in Limine. (Court Doc. 256.) The Court will **GRANT** in part, **DENY** in part, and **RESERVE RULING** in part on the admissibility of the evidence at issue in Defendants OSMC and Dolores K. White, D.O.'s Motions in Limine. (Court Docs. 243-255.)

## II. ANALYSIS

### A. Plaintiffs' Motions in Limine

The Court does not have sufficient information before it to rule on Plaintiffs' Second, Fourth, Sixth, Seventh, and Eighth Motions in Limine. Accordingly, the parties are **ORDERED** to raise any evidentiary objections relating to these motions in limine during the course of the trial, and the Court will **RESERVE RULING** on the admissibility of the evidence at issue in these motions until such a trial evidentiary objection is made. (Court Docs. 265, 267, 269, 270, and 271.)

### 1. Plaintiff's Motion in Limine [*4] One (Court Doc. 264)

Plaintiffs' first motion in limine requests that the Court exclude expert testimony opining as to the percentage of fault that any particular party should bear in this case. They argue that the jury that is responsible for ascertaining the percentage of fault. Defendant STMC opposes this motion in limine to the extent it seeks to exclude STMC from cross examining witnesses on issues concerning different degrees of responsibility for actions, non-actions, and decision-making regarding the medical care provided to Plaintiff Bette Donathan.

*Federal Rule of Evidence 704* states that expert testimony in the form of an opinion or inference is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact. *Rule 704* was not intended to allow, however, experts to offer opinions embodying legal conclusions. See Advisory Committee Notes to *Rule 704 Fed. R. Evid.* Thus, the Court will **GRANT** in part and **DENY** in part Plaintiffs' Motion in Limine One (Court Doc. 264). Expert witnesses are barred from opining as to the percentage of fault of the parties. The Court will, however, allow expert testimony pertaining to the responsibilities of each of [*5] the various medical providers in the instant case.

### 2. Plaintiffs' Motion in Limine Three (Court Doc. 266)

Plaintiffs' third motion in limine requests that the Court redact certain language from the records of Bill S. Rosen, M.D. including: (1) "Unfortunately, there [at Vanderbilt] she waited 8 hours before she had decompressive surgery" (Statement One); (2) "Of note, her sister reports an episode of loss of consciousness while she was in the acute care side of the hospital. At that time she was basically unresponsive for 2 minutes and then some type of cardiac dysthythmia. She reports that after that event she noted slurring of speech and had alerted the hospital staff of this, but to her knowledge no workup was done regarding this issue. Review of the available medical records does not indicate that any type of workup for anoxic brain injury due to cardiac dysthythmia or other occurred" (Statement Two); (3) "She and her husband owned a rental which they have subsequently sold" (Statement Three); (4) "... since this cardiac event when she was

on Levaquil." (Statement Four); and (5) "She shows subtle evidence of both cognitive and motor skill involvement related to a possible anoxic brain [*6] injury." (Statement Five).

Plaintiffs contend that the above statements are inadmissible because they are all irrelevant and/or hearsay statements. *Fed. R. Evid. 402-403, 802.* Defendant STMC contends that redacting the phrase "Unfortunately, there (at Vanderbilt) she waited eight hours before she had decompressive surgery" would cure any evidentiary deficiencies. (Court Doc. 274, STMC's Resp. to Pls.' Third Mot. in Limine at 2). Defendant STMC takes no other issue with the other statements in Plaintiffs' Third Motion in Limine. (*Id.*)

The Cumberland Defendants contend that while the word ""Unfortunately," in the phrase "Unfortunately, there (at Vanderbilt) she waited eight hours before she had decompressive surgery" is irrelevant, the delay itself is relevant to the issue of causation. (Court Doc. 307, Cumberland Defs' Resp. to Pls.' Third Mot. in Limine at 2). It contends that the word "unfortunately" should be redacted and the rest of Statement One be allowed into evidence. (*Id.*) The Cumberland Defendants contend that Plaintiffs' objections regarding unfair prejudice and confusion could be remedied by redacting the word "[u]nfortunately" and including a limiting instruction that limits [*7] the jury's consideration of this evidence to the context of causation. They also contend that Statement Two and Statement Five are relevant to the issue of causation and damages.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Fed. R. Evid. 401.* Defendants cite a case from the United States Court of Appeals for the Sixth Circuit which observes that prior sworn statements of the parties should be considered "as a material factor." *Blanton v. Inco Alloys Intern., Inc., 123 F.3d 916, 917 (6th Cir. 1997).* "In performing the 403 balancing, the court should 'give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.'" *Deters v. Equifax Credit Info. Servs., 202 F.3d 1262, 1274 (10th Cir. 2000)* (citing 1 J. Weinstein & M. Burger, *Weinstein's Evidence* § 403[3], 4 03-25 to 4 03-26 (1982)). In weighing the probative value of evidence a Court must consider the evidence "against the background of all the evidence in the case." 22 Charles Alan Wright, Kenneth W. Graham, Jr., *Federal Practice & Procedure:* [*8] *Evidence* § 5214 (1978).

Of course, all relevant evidence is to some degree prejudicial. What the rule discourages is unfair prejudice, which is evidence that has "an undue tendency to suggest decision on an improper basis, commonly but not necessarily an emotional one." *United States v. Whittington, 455 F.3d 736, 739 (6th Cir. 2006).* A court should only exclude evidence as confusing if "the proffered evidence puts [the other party] in the dilemma of choosing between accepting an unfair inference or offering a harmfully confusing rebuttal." 22 Charles Alan Wright, Kenneth W. Graham, Jr., *Federal Practice & Procedure: Evidence* § 5216 (1978).

After reviewing the evidence at issue, the Court will **GRANT** Plaintiffs' Third Motion in Limine in part and will **RESERVE RULING** in part. Statements Three and Four shall be redacted. The Court finds that other potential causes of Bette Donathan's injuries, namely the wait for treatment at Vanderbilt, constitute probative evidence with respect to the issue of causation. *Boburka v. Adcock, 979 F.2d 424, 427-29 (6th Cir. 1992)* (discussing sufficiency of evidence of causation under *Tenn. Code Ann. § 29-26-115(a)*, holding that the Tennessee malpractice statute [*9] requires proof that it is more likely than not that the defendant's negligence caused the injury; "mere possibility" is not enough). Accordingly, the word "[u]nfortunately" shall be redacted from Statement One and the jury shall be given an instruction limiting the admissibility of this statement for the purpose of assessing causation. In accordance with the Court's comments during the October 16, 2009 Final Pre-trial Conference, the Court will **RESERVE RULING** on the admissibility of Statement Two and Statement Five of Plaintiffs' Third Motion in Limine. (Court Doc. 266.)

### 3. Plaintiffs' Motion in Limine Five (Court Doc. 268)

Plaintiffs request that the Court exclude any testimony or evidence implying that there was any type of "delay" in operating on Plaintiff Bette Donathan at Vanderbilt University Medical Center. (Court Doc. 268, Pls. Fifth Mot. in Limine at 1-2.) They contend that such evidence is prejudicial and would likely lead to juror confusion. *Fed. R. Evid. 401-403.* Defendants Cumberland and STMC oppose the instant motion, arguing that such evidence is highly probative and relates to the issue of causation.

Having reviewed the evidence at issue, it is apparent that the timing [*10] of the events leading to Plaintiff Bette Donathan's injuries is pertinent to the issue of

causation. Accordingly, the Court will **GRANT** Plaintiffs' Motion in Limine Five in part and **DENY** in part. The parties may introduce evidence relating to the sequence of events underlying the Plaintiffs' claims in the instant case; the parties may not, however, introduce any evidence or testimony that would suggest or imply that there was delay in operating on Plaintiff Bette Donathan's injuries at Vanderbilt.

## B. The Cumberland Defendants' Motions in Limine

### 1. The Cumberland Defendants's Motion in Limine One (Court Doc. 257)

The Cumberland Defendants move that the Court exclude any expert witness from rendering opinions that a "reasonable patient" would have refused the use of an epidural catheter for post-operative pain management because such testimony is inadmissible under *Rule 702 of the Federal Rules of Evidence* and irrelevant under *Rule 402 of the Federal Rules of Evidence.* The Cumberland Defendants further argue that should the Court consider this evidence to be probative, the value of such testimony would be outweighed by the danger of unfair prejudice and confusion of the issues pursuant to [*11] *Rule 403 of the Federal Rules of Evidence.* (Court Doc. 257, Cumberland Defs.' First Mot. in Limine at 1-2.) Plaintiffs oppose this motion and contend the issue of whether Plaintiff Bette Donathan gave informed consent or had a rational basis for declining consent is highly relevant and probative as to disputed issues in this case. (Court Doc. No. 285, Pls.' Resp. to Cumberland Defs.' First Mot. in Limine at 1-2.) They contend testimony from physicians as to whether all patients consent to such a procedure and, if they do not, under what circumstances they decline, is probative as to the underlying cause of action. *Id.*

*Rule 702 of the Federal Rules of Evidence* provides:
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

*Fed. R. Evid. 702.*

As [*12] the Sixth Circuit has explained, an expert's testimony is not appropriate evidence for the jury to consider when determining whether a "reasonable patient" would have refused a procedure if certain risks and complications had been explained. *Innes v. Howell Corp., 76 F.3d 702, 711-712 (6th Cir. 1996)* (an "expert explains what the attorney's duties were to his client and what might constitute a breach of that duty. In other words, much like an expert in a medical malpractice case, the witness helps the jury understand a special professional standard of care that is different from the "reasonable person" standard used in ordinary negligence cases.").

Having reviewed the evidence at issue, the Court will **GRANT** Cumberland Defendants' Motion in Limine One in part and **DENY** it in part. Expert testimony opining as to whether a "reasonable patient" would have consented to an epidural catheter will not be admitted. The Court, however, will allow testimony pertaining to the question of whether patients consent to such medical procedures and, if they do not, under what circumstances they decline, provided such testimony is limited to the particular witnesses' personal knowledge and does not purport [*13] to represent what a "reasonable patient" would have chosen.

### 2. The Cumberland Defendants' Motion in Limine Two (Court Doc. 258)

The Cumberland Defendants's second motion in limine requests that the Court bar Plaintiffs' experts from opining as to the occurrence or nonoccurrence of factual events. (Court Doc. 257, Def. Cumberland's Second Mot. in Limine at 1-2.) They contend that such testimony is not permissible under *Rule 702 of the Federal Rules of Evidence* and is irrelevant under *Rule 402 of the Federal Rules of Evidence.* They further argue that should the Court consider this evidence to be probative, the value of such testimony would be outweighed by the danger of unfair prejudice and confusion of the issues pursuant to *Rule 403 of the Federal Rules of Evidence. Id.* Plaintiffs oppose this motion and contend that it is proper for experts to testify about the occurrence or nonoccurrence of factual events in providing their opinions because the question of whether a factual event occurred is determined through medical records and deposition testimony of fact witnesses. (Court Doc. 284, Pls.' Resp. to Cumberland Defs.' Second Mot. in Limine at 1-2.)

An expert is entitled to provide his [*14] or her opinion regarding the evidence. See *Fed. R. Evid. 702*. Plaintiffs' briefing makes clear that the scope of any testimony regarding the occurrence or nonoccurrence of factual events will be based upon admitted evidence, including medical records and the deposition testimony of fact witnesses. Accordingly, the Court will **DENY** the Cumberland Defendants' Motion in Limine Two.

### 3. The Cumberland Defendants' Motion in Limine Three (Court Doc. 259)

The Cumberland Defendants seek to limit Plaintiffs' experts from opining as to whether any action was "negligent" or whether any party was "at fault." (Court Doc. 269, Cumberland Defendants's Motion in Limine Three at 1-3.) Plaintiffs do not oppose the motion with respect to the phrase "at fault," but they do contend that their experts should be allowed to use the word "negligent" as it is a necessary element of their burden of proof. (Court Doc. 283, Pls.' Resp. to Cumberland Defendants' Mot. in Limine Three at 2-3.)

Although an expert's opinion may embrace an ultimate issue to be decided by the trier of fact, the issue embraced must be a factual one. *Fed. R. Evid. 704(a)*. For instance, it would be proper for an expert to opine as to the standard [*15] of care. *Honeycutt v. Mohney, 2006 U.S. Dist. LEXIS 24157, at * 2-3 (E.D. Tenn. March 20, 2006)* (explaining that "[i]n order for a plaintiff to carry his burden of proof in a medical negligence case, the plaintiff must establish by expert testimony that the defendant deviated from the recognized standard of acceptable practice, and that the deviation from the standard of care was the proximate cause of the plaintiff's injuries."). The Sixth Circuit, however, has also instructed trial courts to exclude expert testimony that expresses "a legal conclusion," including expert testimony that a defendant was negligent. *Berry v. City of Detroit, 25 F.3d 1342, 1354 (6 th Cir. 1994)* (internal citations omitted). Accordingly, the Court will **GRANT** the Cumberland Defendants' Motion in Limine Three.

### 4. The Cumberland Defendants' Motion in Limine Four (Court Doc. 260)

The Cumberland Defendants's fourth motion in limine seeks to have the Court bar any testimony from expert witnesses which expresses the opinion that there existed "an indiscriminate use of epidural catheters" at STMC. (Court Doc. No. 260, Def. Cumberland's Mot. in Limine Four at 1-2). They contend that such language is "inflammatory and [*16] overly prejudicial and should be excluded pursuant to *Rule 403 of the Federal Rules of Evidence*." *Id*. Plaintiffs oppose this motion and argue that the term "indiscriminate" is not unduly inflammatory. (Court Doc. No. 282, Pls.' Resp. to Def. Cumberland's Mot. in Limine Four at 1-2). The Court agrees with Plaintiffs. Accordingly, the Cumberland Defendants' Motion in Limine Four will be **DENIED.**

### 5. The Cumberland Defendants' Motion in Limine Five (Court Doc. 261)

The Cumberland Defendants' fifth motion in limine seeks to have the Court bar any testimony from expert witnesses that encompasses the opinion that "allowing a student registered nurse anesthetist to explain the risks and benefits of a procedure was below the standard of care." (Court Doc. No. 261, Def. Cumberland's Mot. in Limine Five at 1-2). They contend that the testimony is irrelevant to the issues in the case pursuant to *Rule 402 of the Federal Rules of Evidence*, and should any probative value to such evidence exist, it is substantially outweighed by the risks of unfair prejudice and confusion of the issues pursuant to *Rule 403 of the Federal Rules of Evidence*." *Id*. Plaintiffs oppose the motion because they contend that the [*17] expert testimony at issue is directly pertinent to their claims that certain defendants failed to adequately supervise student registered nurse anesthetists (SRNAs) and negligently allowed SRNAs to attempt to obtain the informed consent of patients. (Court Doc. No. 282, Pls.' Resp. to Def. Cumberland's Mot. in Limine Five at 1-2). The Court agrees that the evidence at issue in this motion in limine is relevant to Plaintiffs' claims regarding the negligent supervision of SRNAs, as well as to their claim that allowing SRNAs to obtain informed consent was negligent. Accordingly, the Cumberland Defendants' Motion in Limine Five will be **DENIED.**

### 6. Cumberland Defendants' Motion in Limine Six (Court Doc. 262)

The Cumberland Defendants request that the Court exclude evidence relating to a standing order that provided for the notification of "Anesthesia to discontinue epidural" and also required the notation of a patient's "INR in [his or her] chart" if the patient was on "Coumadin." (Court Doc. No. 262, Def. Cumberland's Mot. in Limine Six at 1-2). They argue that the standing order was developed due to Plaintiff Bette Donathan's

injuries and that this evidence should be excluded pursuant to [*18] *Rule 407 of the Federal Rules of Evidence* and, to the extent this rule does not apply, they contend that evidence relating to the standing order is inadmissible pursuant to *Rule 403 of the Federal Rules of Evidence.* (*Id.*)

Defendants Orthopaedic & Sports Medicine Clinic, PLLC and Delores K. White, D.O. do not object to this motion in limine to exclude subsequent remedial measures implemented, but do contend that counsel should be permitted to examine witnesses about the lack of policy regarding epidural removal, the existence of such policies at other facilities where various nurses, CRNAs, and physicians have practiced, and the ability of Dr. Gordon or others to have implemented such a policy at STMC. (Court Doc. 273, Defendants Orthopaedic & Sports Medicine Clinic, PLLC and Delores K. White, D.O. Opp'n to Cumberland Defs.' Mot. in Limine Six at 1-2). Plaintiffs join Defendants Orthopaedic & Sports Medicine Clinic, PLLC and Delores K. White, D.O. opposition to this motion. (Court Doc. 280, Pls.' Opp'n to Cumberland Defs.' Mot. in Limine Six at 1.)

Generally, under *Rule 407*, evidence of subsequent remedial measures that would have made an event less likely to occur is inadmissible to [*19] prove negligence or culpable conduct. *Fed. R. Evid. 407*; *Patrick v. South Cent. Bell Tel. Co., 641 F.2d 1192 (6th Cir. 1980)*. However, such evidence is admissible to prove ownership, control, or feasibility of precautionary measures, if controverted, or for impeachment. *Fed. R. Evid. 407*. Accordingly, the Court will **GRANT** the Cumberland Defendants' Motion in Limine Six in part and **DENY** in part. Evidence relating to the Standing Order is inadmissible except to the extent that it is used to prove the feasability of precautionary measures or, if controverted, impeachment.

### C. Defendant Elizabeth Reimers M.D.'s Motion in Limine (Court Doc. 263)

Defendant Elizabeth Reimers M.D. seeks for the Court to exclude any evidence relating to the following:

1. Any reference to, or evidence of, Dr. Reimers's alleged dispensation of, and causation of the dispensation of, quantities of controlled substances to patients outside the scope of professional practice and not for a legitimate medical purpose;

2. Any reference to, or evidence of, Dr. Reimers's indictment for allegedly knowingly and intentionally dispensing, and causing to be dispensed, quantities of controlled substances to patients outside the [*20] scope of professional practice and not for a legitimate medical purpose in violation of Title *21, United States Code, Sections 841(a)(1)* and *(b)*, and Title *18, United States Code, Section 2*;

3. Any reference to, or evidence of, Dr. Reimers's voluntary surrender of her DEA license arising out of her allegedly knowing and intentional dispensation of, and causation of the dispensation of, quantities of controlled substances to patients outside the scope of professional practice and not for a legitimate medical purpose;

4. Any reference to, or evidence of, the Order Setting Condition of Release issued October 30, 2008, prohibiting Dr. Reimers from the practice of any form of medicine;

5. Any reference to, or evidence of, the investigation(s) of Dr. Reimers conducted by the Tennessee Board of Health or the Tennessee Board of Medical Examiners for Dr. Reimers's alleged violation of federal drug laws, Tennessee laws, or Tennessee Department of State rules and regulations;

6. Any reference to, or evidence of, any disciplinary action against Dr. Reimers's medical license to practice as a doctor in the State of Tennessee as a result of her alleged violation of federal drug laws, Tennessee laws, [*21] or Tennessee Department of State rules and regulations;

7. Any reference to, or evidence of, Dr. Reimers's alleged violation of any Tennessee Department of State rule or regulation arising out of her alleged dispensation of controlled substances;

8. Any civil penalties requested to be assessed against Dr. Reimers as a result of her alleged violations of any Tennessee laws or Tennessee Department of State rules and regulations;

9. Any reference to, or evidence of, any other investigation(s) of Dr. Reimers conducted as a result of her alleged dispensation of controlled substances;

10. Any reference to, or evidence of, any lawsuit(s) arising out of Dr. Reimers' alleged dispensation of controlled substances.

(Court Doc. No. 263, Reimers' Mot. in Limine at 1-2.)

Defendant Reimers contends this evidence is irrelevant, inadmissible evidence of "other crimes, wrongs, or acts to prove conformance therewith," and to the extent such

evidence may be admissible, its probative value is substantially outweighed by its prejudicial effect. *Id.; Fed. R. Evid. 401, 403, 404(b)*. Plaintiffs do not oppose this motion to the extent the motion addresses criminal charges or civil charges. (Court Doc. 328, Pls.' [*22] Resp. to Reimers' Mot. in Limine at 1-2.) Plaintiffs, however, do request that if Defendant Reimers is convicted or pleads guilty to a criminal charge prior to trial, the Court reserve ruling until trial because such evidence would be impeachment evidence under *Rule 609 of the Federal Rules of Evidence.* The Court agrees with Plaintiffs that ruling on the instant motion in limine at this point in time is premature. Accordingly, the parties are **ORDERED** to raise any evidentiary objections relating to this motion in limine during the course of trial, and the Court will **RESERVE RULING** on the admissibility of the evidence at issue in this motion until such an objection is made.

### E. Defendant Southern Tennessee Medical's Motions in Limine (Court Doc. 256)

#### 1. Motion in Limine No. 1: Excluding Commentary by Counsel and Cross-Examination of the Hospital's Witnesses Regarding Prior Malpractice Cases and Prior Representation by Counsel for the Hospital

STMC's Motion in Limine No. 1 seeks to exclude any comment by counsel or cross-examination of any witnesses regarding previously filed medical malpractice cases against STMC. (Court Doc. 256, STMC Mots. in Limine at 3-5). It contends that such evidence [*23] is inadmissible pursuant to *Rules 402, 404(b)*, and *608(b) of the Federal Rules of Evidence.* Plaintiffs agree that evidence of prior malpractice cases are generally not relevant, but contend that such evidence is relevant: (1) if there has been a finding of malpractice on the part of the witness, or (2) if the prior malpractice case involves claims or testimony which are inconsistent with the testimony of an expert witness. Plaintiffs contend that the jury is entitled to know if experts have a working relationships with an attorney or if defense counsel has used the expert witness previously as this to goes to the issue of bias.

At the outset, the Court notes that evidence relating to prior malpractice claims where there has been a finding of malpractice on the part of the witness and prior malpractice claims or testimony that are inconsistent with the testimony of an expert witness is relevant to the weight the jury may give an expert opining on the standard of care.

The Court next turns to STMC's contention that such statements are inadmissible pursuant to *Rule 404(b) of the Federal Rules of Evidence.* That rule provides in pertinent part:

> Evidence of other crimes, wrongs, or acts is [*24] not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

*Fed. R. Evid. 404(b).*

For example, evidence of past criminal activity is inadmissible to show criminal propensity. *United States v. Ismail, 756 F.2d 1253, 1258 (6th Cir. 1985);* see also 22 C. Wright and K. Graham, Federal Practice and Procedure § 5239 at 436 (1978)("The basic reason for the inadmissibility of evidence of other crimes, wrongs, or acts is that such evidence is irrelevant to prove the conduct in question."). Such evidence, nevertheless, may be admissible for other purposes.

The list of permissible purposes for admitting "bad acts" evidence is not exhaustive. 22 C. Wright and K. Graham, Federal Practice and Procedure § 5240 at 470 ("*Rule 404(b)* makes clear that the list of purposes for which other acts may be admissible is only illustrative; it is not intended to exhaust the possibilities."). In *United States v. Blankenship, 775 F.2d 735, 739 (6th Cir. 1985)*, the Sixth Circuit noted that *Rule 404(b)* "is actually [*25] a rule of inclusion rather than exclusion, since only one use is forbidden and several permissible uses of such evidence are identified." *Id. at 739.*

Moreover, the evidence is not automatically admissible once it has been established that it is relevant for a purpose independent of the forbidden inference of propensity. Before admitting the prior acts evidence, the district court must apply *Rule 403*'s balancing test and make two determinations: (1) that the evidence is admissible for a proper purpose and (2) that the probative value of the evidence outweighs its potential prejudicial effects. *United States v. Vance, 871 F.2d 572, 575 (6th Cir.),* cert. denied, 493 U.S. 933, 110 S. Ct. 323, 107 L. Ed. 2d 313 (1989). "A district court is granted 'very broad' discretion in determining whether the danger of undue prejudice outweighs the probative

value of the evidence. . . ." *Vance, 871 F.2d at 576*.

*Rule 608(b) of the Federal Rules of Evidence* specifically prohibits a party from introducing extrinsic evidence to prove specific instances of conduct of a witness for the purpose of attacking the witness' credibility. Such evidence is, however, admissible "on cross exam if probative of the truthfulness [*26] or untruthfulness." *United States v. Graham, 856 F.2d 756, 759 (6th Cir. 1988)*, cert. denied, 489 U.S. 1022, 109 S. Ct. 1144, 103 L. Ed. 2d 204 (1989); *Fed. R. Evid. 608(b)*.

In the instant case, the Court finds the instant motion to be premature and its ultimate resolution to be dependent on a witness' testimony regarding the issue presented. Accordingly, the parties are **ORDERED** to raise any evidentiary objections relating to this motion in limine during the course of trial, and the Court will **RESERVE RULING** on the admissibility of the evidence at issue in this motion until such an objection is made.

## 2. Motion in Limine No. 4: Excluding Expenses For Which Plaintiffs Are Not Personally Liable

STMC moves to exclude any evidence relating to expenses for which Plaintiffs are not personally liable. STMC Mots. in Limine at 6-7. It contends that Plaintiffs, as a matter of law, are only entitled to recover "actual economic losses suffered by the claimant" and that such evidence of medical charges incurred should be excluded and only evidence of the amounts paid should be admitted. *Id.* at 1-2, citing *Tenn. Code Ann. § 29-26-119*. The statute provides:

> In a malpractice action in which liability is admitted or established, the damages [*27] awarded may include (in addition to other elements of damages authorized by law) actual economic losses suffered by the claimant by reason of the personal injury including, but not limited to cost of reasonable and necessary medical care, rehabilitation services, and custodial care, loss of services and loss of earned income, but only to the extent that such costs are not paid or payable and such losses are not replaced, or indemnified in whole or in part, by insurance provided by an employer either governmental or private, by social security benefits, service benefit programs, unemployment benefits, or any other source except the assets of the claimant or of the members of the claimant's immediate family and insurance purchased in whole or in part, privately and individually.
> *Tenn. Code. Ann. § 29-26-119*.

STMC contends that only the amount medical expenses "paid" should be admitted or discussed because the amount charged does not represent what the Plaintiffs are obligated to pay either directly or through their insurance carrier and does not include the contractual adjustment a healthcare provider is required to write-off. Plaintiffs oppose this motion in part, because the phrasing [*28] of the term "only evidence of the amounts actually paid" differs from the statutory language which provides for the medical expenses that are "paid or payable." Court Doc. 289, Pls.' Resp. to STMC Mots. in Limine at 1-2. The Court finds that the proper evidentiary restriction must comport with the statutory mandate of *Tenn. Code. § 29-26-119*, which contains no reference to contractual adjustments or write-offs. Accordingly, the Court will **GRANT** Defendant STMC's Motion in Limine No. 4 in part and **DENY** it in part. Pursuant to *Tenn. Code 29-26-119*, the parties may introduce evidence, testimony, and proof of amount of medical expenses that were "paid or payable" as it relates to the issue of medical expenses.

## 3. Motion in Limine No. 6: Excluding Examining On The Issue Of Personal Practices

STMC requests that the Court bar questioning of any expert witnesses in regard to that witness' personal practice, personal standard, or what "he/she would do" under certain circumstances or at a particular hospital. STMC Mots. in Limine at 8-9. It contends that *Rule 402 of the Federal Rules of Evidence* mandates the prohibition of such questioning because the scope of an expert's testimony is limited to [*29] proving a deviation from the recognized standard of acceptable medical professional practice among hospital staff members practicing in this community or a similar community under the facts of this case. *Id.* Plaintiffs object to this motion and argue that the personal practice standard of any witness may become relevant to the trier of fact in understanding the foundation for the witnesses' testimony on the standard of care. Plaintiffs also contend that such testimony may be relevant for impeachment.

The Court finds that the evidence regarding the personal practices of an expert is necessary to establish the foundation for the testimony of an expert witness. See *Mannino v. Int'l Mfg. Co., 650 F.2d 846, 851 (6th Cir. 1981)* ("The only thing a court should be concerned

with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth. The weight of the expert's testimony must be for the trier of fact."). A trier of fact could discount the testimony of an expert with personal knowledge of the standard of care if that expert regularly departs from it in his or [*30] her own practice. Accordingly, the Court will **DENY** Defendant STMC's Motion in Limine No. 6.

### 4. Motion in Limine No. 8: Precluding Plaintiffs From Disclosing Or Requesting A Specific Sum Of Monetary Damages To The Jury

STMC requests that the Court bar Plaintiffs from disclosing to or requesting from the jury a specific sum of monetary damages. STMC Mots. in Limine at 10. It contends that Plaintiffs are barred from such practice as a matter of law. *Id.* citing *Tenn Code Ann. § 29-26-117*. Plaintiffs contend that they should be permitted to argue the value of the case to the jury. (Court 291, Pls.' Resp. to STMC Mots. in Limine at 2-3.) *Tenn Code Ann. § 20-9-304* provides:

> In the trial of a civil suit for personal injuries, counsel shall be allowed to argue the worth or monetary value of pain and suffering to the jury; provided, that the argument shall conform to the evidence or reasonable deduction from the evidence in such case.

*Id.*

Although,"the pleading filed by the plaintiff may state a demand for a specific sum," it is also true that "such demand shall not be disclosed to the jury during a trial of the case." *Tenn. Code. Ann. 29-26-117*. Reading these two statutes together, it is apparent [*31] that Plaintiffs may argue the worth or monetary value of pain and suffering to the jury, but they may not disclose the specific sum sought in the Amended Complaint. Accordingly, the Court will the Court will **GRANT** Defendant STMC's Motion in Limine No. 8 in part and **DENY** Defendant STMC's Motion in Limine No. 8 in part.

### 5. Motion in Limine No. 9: Excluding "Day In The Life Videos" And Excluding Or Limiting The Use Of "Selected Photographs And Videos"

STMC requests that the Court exclude all day-in-the-life videotapes and all other graphic representations of Plaintiff Bette Donathan's injuries during trial. In the alternative, it requests that the Court exclude audio tracks included in videotapes or other graphic representations of Plaintiff's injuries. STMC's Mot. in Limine at 11-13. It contends that such evidence is irrelevant and, if relevant, such evidence evinces clear prejudice to STMC and should be stricken pursuant to *Rule 403 of the Federal Rules of Evidence. Id.* Plaintiffs contend that the Court should deny this motion limine and should allow for the admission of a three minute silent video, which shows Plaintiff Bette Donathan in her home as well as the admission of a limited [*32] number photographs that demonstrate her general state of health and activity.

Courts have usually admitted into evidence even graphic pictures of injuries or dramatized "day-in-the-life" videotapes under the rationale that such pictures are "certainly admissible as a matter of discretion by the trial judge, if not as a matter of right." *Walls v. Armour Pharm. Co., 832 F. Supp. 1505, 1509 (M.D. Fla. 1993) citing Holmes v. Black River Electric Coop., 274 S.C. 252, 262 S.E.2d 875, 878 (S.C. 1980).* In *Holmes,* the trial court admitted pictures of plaintiff's injured and amputated arm.

> There is no contention that the pictures do not accurately reflect Holmes and his injuries at the time the photographs were taken. There can be no doubt but that they prejudiced the defendant's case in the sense that they were detrimental, but they showed a condition which Holmes was entitled to either describe to the jury in words or by pictures, or a combination of the two. This demonstrative evidence aided the jury in its evaluation of the injuries and pain suffered. It cannot be said that they were introduced in evidence for the sole purpose of inflaming the minds of the jury; they served the proper purpose [*33] of bringing vividly to the jurors the details of tremendous injuries. The pictures were certainly admissible as a matter of discretion by the trial judge, if not as a matter of right. We find no error.

*Holmes, 274 S.C. at 258.*

The "possibility that a film will be prejudicial is significantly reduced when the subject of that film can be cross-examined at trial." *Bannister v. Town of Noble, OK, 812 F.2d 1265, 1270 (10th Cir. 1987)* (discussing "Day in the Life" video). Such films are frequently used at trial in conjunction with live testimony. *See e.g., Slakan v. Porter, 737 F.2d 368, 378 (4th Cir. 1984)*

(videotape demonstrating power of water hose shown along with the expert testimony of a fireman), cert. denied, 470 U.S. 1035, 105 S. Ct. 1413, 84 L. Ed. 2d 796 (1985); Szeliga v. General Motors Corp., 728 F.2d 566, 567-68 (1st Cir. 1984) (videotapes demonstrating wheels crashing into cement wall shown in conjunction with expert's testimony about cause of accident).

Although the Court finds that such evidence is relevant to the issue of damages, it also finds the instant motion to be premature and dependent on the whether certain witnesses testify, namely Plaintiffs Bette Donathan and [*34] Ben Donathan. Accordingly, the parties are **ORDERED** to raise any evidentiary objections relating to this motion in limine during the course of trial, and the Court will **RESERVE RULING** on the admissibility of the evidence at issue in this motion until such an objection is made.

### 6. Motion in Limine No. 10: Admission Of Evidence Of Settlement Funds Or Alternatively, Exclude Actual Economic Losses Paid By Settlement Funds

STMC requests that the Court admit evidence relating to claims for past and future medical care, rehabilitation, custodial care, loss of service, and loss of services, which have been paid or are payable as a result of these settlement monies. It contends that such funds are excluded from Plaintiffs' recovery as a matter of law. See Tenn. Code. Ann. 29-26-119. Plaintiffs oppose this motion and contend that Plaintiff Bette Donathan is required to reimburse the insurance carrier for the driver for the monies the insurance company paid in a confidential settlement of her claims that arose as a result of this accident and that her losses were not "replaced or indemnified" within the meaning of T.C.A. § 29-26-119. Plaintiffs also contend that evidence relating to Plaintiff Better [*35] Donathan's car accident settlement is irrelevant to the injuries she sustained as a result of the alleged malpractice because they are two distinct events.

Tenn. Code Ann. § 29-26-119 states that a medical malpractice plaintiff may not recover for the cost of medical care if that cost was indemnified in whole or in part by employer-provided insurance. Richardson v. Miller, 44 S.W. 3d 1, 32 (Tenn. App. 2000). The statute seeks to prohibit injured parties from realizing a double recovery by reducing a plaintiff's recovery by the amount of benefits paid by employer-provided insurance. See Nance v. Westside Hosp., 750 S.W.2d 740, 742 (Tenn. 1988). Excluded, however, from the statute's general operation are collateral payments made where the collateral payor has subrogation rights. See Nance v. Westside Hosp., 750 S.W.2d at 743.

Where the injured insured must repay the insurer out of any damages recovered, the insured realizes no double recovery. Stated another way, where a right of subrogation exists or where the tort victim has a legal obligation to repay the collateral source payor, then the victim's losses have not been "replaced or indemnified" for purposes of Tenn. Code Ann. § 29-26-119. [*36] See Nance v. Westside Hosp., 750 S.W.2d at 743; Hughlett v. Shelby County Health Care Corp., 940 S.W.2d 571, 574 (Tenn. Ct. App. 1996). Thus, the Court finds that evidence relating to funds from Plaintiff Bette Donathan's settlement is inadmissible, because she had a legal obligation to repay these funds to her insurer. In addition, the Court finds such evidence inadmissible because there is a significant temporal distinction between the events causing Plaintiff Bette Donathan's injuries as a result of the car accident and the alleged injuries she incurred while a patient at STMC. Accordingly, the Court will **DENY** Defendant STMC's Motion in Limine No. 9.

### 7. Motion in Limine No. 11: Excluding Certain Questioning Or Commentary

STMC requests that the Court exclude evidence and testimony regarding witnesses' personal assessment of malpractice litigation, legislative efforts at medical malpractice reform, person opinions on "what it must be like" to care for Bette Donathan or "what life must be like" for Bette Donathan. It contends that such evidence is irrelevant, speculative and prejudicial. STMC Mot. in Limine at 16-17 citing Fed. R. Evid. 401, 402, 602. Plaintiffs do not oppose barring [*37] the introduction of evidence to the extent it limits evidence and testimony regarding a witnesses' personal assessment of malpractice litigation or legislative efforts at medical malpractice reform. Plaintiffs, however, do oppose this motion to the extent that it is vaguely bars the admission of evidence of "what it must be like" to care for Plaintiff Bette Donathan and "what life must be like" for Plaintiffs Bette and Ben Donathan. The Court agrees with Plaintiffs that the instant motion in limine is vague and that evidence regarding the care for Plaintiff Bette Donathan is pertinent to the claims at issue. Accordingly, the Court will **RESERVE** ruling on this motion until trial and the parties are **ORDERED** to raise any evidentiary objections relating to this motion in limine during the course of trial.

### 8. Motion in Limine No. 12: Excluding Diagnoses Or Causation Opinions Offered By Nurses

STMC requests that the Court exclude evidence and testimony regarding medical diagnoses or opinions regarding causation from individuals licensed as nurses. STMC Mots. in Limine at 18. It contends that only physicians are entitled to diagnose and prescribe for any physical injury and that a nurse is precluded [*38] from "acts of medical diagnoses or the development of a medical plan of care and therapeutics for a patient." *Id.* citing *Tenn Code. Ann. §§ 63-6-204, 63-7-103(b)*. Plaintiff oppose the instant motion and contend that a nurse, serving as an expert witness, should be allowed to testify as to the areas covered by the Tennessee Nurse Practice Act. Court Doc. No. 256, Pls.' Resp. to STMC Mots. in Limine at 295 citing *Tenn. Code Ann. § 63-7-103(a)(2)(A)-(F)*. While Plaintiffs acknowledge that a nurse would not be allowed to give a medical diagnosis or give a definitive opinion regarding the medical cause of a patient's condition, they are permitted to testify regarding the duties outlined in *Tenn. Code. Ann. § 63-7-103(2)(A)-(F)*. The Court agrees. Accordingly, Defendant STMC's Mot. in Limine No. 12 is **DENIED** and Plaintiffs may introduce expert testimony of nurses so long as such testimony encompasses the explicit statutory duties described in *Tenn Code. Ann. § 63-7-103*.

### 9. Motion in Limine No. 13: Excluding Questioning, Testimony Or Commentary Regarding The Availability of Plaintiff Bette Donathan's Chart Post-Discharge

STMC requests that the Court exclude evidence and testimony regarding the availability [*39] or unavailability of the chart; timing of review post-discharge; and location of the chart post-discharge. STMC Mots. in Limine at 19-21. It contends such evidence is irrelevant under the Federal Rules of Evidence, and to the extent such evidence is relevant, its probative value is outweighed by its prejudicial effect. *Id.* It also contends that the motion is inadmissible hearsay under *Rule 801* and *802 of the Federal Rules of Evidence* and is inadmissible speculation under *Rule 602 of the Federal Rules of Evidence.* *Id.* Plaintiffs' oppose this motion and contend that they will prove that as a matter course, the defendant's hospital chart should have contained an informed consent form and that such evidence is indeed probative because it would indicate the person who obtained consent from Plaintiff Bette Donathan. Court Doc. No. 296, Pls. Resp. to STMC Mots. in Limine at 1-3. Plaintiffs contend such evidence is probative because each anesthesia personnel who could have made the decision to use the epidural catheter denies making this decision. *Id.* Finally, Plaintiffs argue that they intend to introduce evidence that there are entries in the chart which were not in the chart after Plaintiff [*40] Bette Donathan was paralyzed.

Plaintiffs must introduce evidence establishing a foundation for the chart and the manner in which such charts are kept prior to introducing any evidence regarding deviations from that standard. Accordingly, the Court will **RESERVE RULING** on the admissibility of the evidence at issue until such a foundation is made. (Court Docs. 265, 268, 269, 270, and 271.) The parties are furthered **ORDERED** to raise any evidentiary objections relating to this motions in limine at trial.

### 10. Motion in Limine No. 14: Excluding Questioning, Testimony Or Commentary Regarding Practices At Other Hospitals Concerning The Removal Of Epidural Catheters By Nursing Staff

STMC requests that the Court exclude evidence and testimony regarding experiences and practices at other hospitals concerning the removal of epidural catheters by nursing staff absent a showing that these practices at other hospitals represent the standard of care applicable to the staff at Southern Tennessee Medical Center in 2006. STMC Mots. in Limine at 22-26. It contends such evidence is irrelevant and outside the scope of *T.C.A. § 29-26-115*. *Id.* citing *Fed. R. Evid. 401*. Defendants Orthopaedic & Sports Medicine [*41] Clinic, PLLC and Delores K. White, D.O. oppose the instant motion and contend that evidence testimony regarding experiences and practices at other hospitals concerning the removal of epidural catheters is relevant to the witnesses' knowledge of the standard of care and credibility. Plaintiffs oppose this motion in limine on the same grounds.

The Court finds that the evidence regarding the personal experiences of a witness regarding the removal of epidural catheters is necessary to establish foundation for the testimony of an expert witness. See *Mannino v. Int'l Mfg. Co., 650 F.2d 846, 851 (6th Cir. 1981)* ("The only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth. The weight of the expert's testimony must be

for the trier of fact."). A trier of fact would likely discount the testimony of an expert with personal knowledge of the standard of care if that expert regularly departs from it in his or her own practice. Accordingly, the Court will **DENY** Defendant STMC's Motion in Limine No. 14.

**11. Motion in Limine [*42] No. 15: Excluding Evidence, Questioning, Testimony, Or Commentary Regarding Elizabeth Reimers, M.D.'s Recruitment to Winchester, Tennessee**

STMC seeks to exclude all evidence relating to Defendant Reimers' recruitment to Winchester, Tennessee. It contends that Defendant Reimers' recruiting arrangement is irrelevant because her recruiting relationship with STMC had ended prior to the date of Bette Donathan's injuries. STMC Mots. in Limine at 28-29. It contends that there is no factual basis to support Plaintiffs' claim that Defendant Reimers acted under apparent agency authority for STMC and that STMC is vicariously liable for her actions. *Id.* Plaintiffs oppose this motion and contend that the reasons why Dr. Reimers moved to Winchester is relevant background information and that Dr. Reimers was an agent of the hospital at the time of her alleged malpractice pursuant to the principles of *respondeat superior* and apparent agency. Court Doc. No. 298, Pls.' Resp. to STMC Mots. in Limine at 1-2.

The issue of whether Dr. Reimers was an agent of the hospital either under the theory of *respondeat superior* or apparent agency is a question for the jury to resolve based upon the evidence introduced [*43] by the parties. Accordingly, the Court will **DENY** Defendant STMC's Motion in Limine No. 15.

**12. Motion in Limine No. 16: Excluding Evidence Re: Alleged Cognitive Impairment and Apneic Episode**

STMC requests that the Court exclude all evidence relating to Plaintiff Bette Donathan's apneic event, including evidence or testimony that contends such an event was a result of a negligent act or omission by any Defendant and that this event proximately caused Plaintiff Bette Donathan to suffer from cognitive impairment. STMC Mots. in Limine at 30-31. It contends that Plaintiffs' Amended Complaint does not allege that any of the injuries which Plaintiff Bette Donathan suffered from an apneic event were a result of any Defendants' breach of the applicable standards of care. *Id.* Thus, it contends such evidence is irrelevant to the claims at issue. Plaintiffs contends the instant motion is premature and the Court's ultimate ruling on this evidentiary issue will depend on whether or not evidence is introduced concerning cognitive impairments or deficits that occurred while Plaintiff Bette Donathan was at Vanderbilt Medical Center were related to the underlying claims in this case. Court Doc. No 299, [*44] Pls.' Resp. to STMC Mots. in Limine 1-2. The Court agrees. Accordingly, the parties are **ORDERED** to raise any evidentiary objections relating to this motion in limine during the course of trial, and the Court will **RESERVE RULING** on the admissibility of the evidence at issue in this motion until such an objection is made.

**13. Motion in Limine No. 17: Student Anesthesia Program and Alleged Financial Incentives To Use Regional Anesthesia**

STMC requests that the Court exclude all evidence relating to alleged financial incentives on the part of STMC with regard to the use of regional/epidural anesthesia for postoperative pain management. STMC Mots. in Limine at 32-34. It contends that the Amended Complaint does not contain any allegation regarding improper financial incentives for the student anesthesia program. *Id.* at 33. Thus, STMC contends such evidence should be excluded pursuant to *Rules 401* and *402 of the Federal Rules of Evidence.* To the extent such evidence is not irrelevant, STMC also argues that the evidence should be excluded pursuant *Rule 403 of the Federal Rules of Evidence.* Plaintiffs oppose this motion and contend that it intends to introduce evidence and testimony that the financial [*45] incentives tied to the use of epidural catheters led to a departure from the standard of care. Plaintiffs further contend that such evidence supports their contention that the Defendants breached the established standard of care while treating Bette Donathan.

The Court finds the evidence at issue in this motion to be relevant to the issue of whether the Defendants breached the standard of care and further find that such evidence would not prejudice nor confuse a jury in assessing the merits of this case. Accordingly, the Court will **DENY** Defendant STMC's Motion in Limine No. 17.

**14. Motion in Limine No. 18: Absence of MRI Services On The Weekend**

STMC requests that the Court exclude evidence that the applicable standard of care required the hospital to provide for MRI services on the weekend while plaintiff Bette Donathan was a patient at STMC. STMC Mots. in Limine at 35-36. It contends that the Amended Complaint does not allege that the Hospital was obligated to provide MRI services, nor has a single

witnesses provided deposition testimony to that effect, nor have Plaintiffs submitted any Rule 26 disclosure establishing such was required by the standard of care. Thus, STMC contends such [*46] evidence should be excluded pursuant to Rules 401 and 402 of the Federal Rules of Evidence. To the extent such evidence is not irrelevant, STMC also contends the evidence should be excluded pursuant Rule 403 of the Federal Rules of Evidence. Plaintiffs concede that they do not have expert testimony that an MRI was required to be performed on Sunday April 16, 2006. They also contend, however, if a Defendant offers evidence or testimony that an MRI was required, they should be permitted to refute such evidence.

The Court, at present, does not have sufficient information before it to rule on this motion in limine. Accordingly, the parties are **ORDERED** to raise any evidentiary objections relating to the premature motion in limine during the course of trial, and the Court will **RESERVE RULING** on the admissibility of the evidence at issue in this motions until such an objection is made.

**15. Motion in Limine No. 19: Alleged "Battleground" Between Anesthesia And Surgeons Regarding Epidural Anesthesia**

STMC requests that the Court exclude evidence that it was aware, through its administration or nursing staff, of the existence of a "battleground" between anesthesia and orthopedic surgeons regarding [*47] the use of epidural anesthesia for postoperative pain management. STMC Mots. in Limine at 37-43. It contends that Plaintiffs were unable to establish during discovery that Dr. White has said that there was a dispute or battle between her and Dr. Gordon or between the orthopaedic surgeons and anesthesia providers at the hospital. Thus, STMC contends such evidence should be excluded pursuant to Rules 401 and 402 of the Federal Rules of Evidence. To the extent such evidence is not irrelevant, it also contends the evidence should be excluded pursuant Rule 403 of the Federal Rules of Evidence.

Plaintiff contends that it intends to introduce evidence at trial that there was a major disagreement regarding the use of epidural catheters between the anesthesia and surgery departments and that the hospital was aware of such a disagreement but failed to take action to address such issues. Court Doc. No. 302, Pls.' Resp. to STMC Mot. in Limine at 1-10. Plaintiffs further contend such evidence is relevant to the issue of whether the hospital was negligent and breached a standard of care owed to its patients. Id.

The Court finds the evidence at issue in this motion to be relevant to the issue of whether [*48] the Defendants breached the standard of care and further finds that such evidence would not prejudice nor confuse a jury in assessing the merits of this case. Accordingly, the Court will **DENY** Defendant STMC's Motion in Limine No. 19.

**16. Motion in Limine No. 20: FRE 104(a) and Daubert Motion Concerning Qualifications of Alan Markowitz and Darla Ura, RN As Expert Witnesses**

STMC's Motion in Limine No. 20 requests that the Court make a Daubert finding with respect to the qualifications of two of Plaintiffs' experts: (1) Dr. Alan Markowitz; and (2) Darla Ura, RN. STMC Mots. in Limine at 44-47. During the Final Pre-trial Conference, STMC stated that it did not request a Daubert hearing on this motion. The Court is, nonetheless, bound to apply the standards governing the admission of expert testimony as established in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) and Kumho Tire Co., v. Carmichael, 526 U.S. 137, 147, 149, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999).

In Daubert, the United States Supreme Court held that the Federal Rules of Evidence had superseded the "general acceptance" test of Frye v. United States, 293 F. 1013 (D.C. Cir. 1923), [*49] and that Federal Rule of Evidence 702 requires that trial courts perform a "gatekeeping role" when considering the admissibility of expert testimony. Daubert, 509 U.S. at 597. Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Rule 702 applies not only to scientific testimony, but also to other types of expert testimony based on technical or other specialized knowledge. See Kumho Tire Co., 526 U.S. at 147, 149.

Colton Richardson

The court's gate-keeping role is two-fold. First, the court must determine whether the testimony is reliable. See *Daubert, 509 U.S. at 590*. The reliability analysis focuses on whether the reasoning or methodology underlying the testimony is scientifically [*50] valid. *Id.* The expert's testimony must be grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief. *Id.* The proponent of the testimony does not have the burden of establishing that it is scientifically correct, but that, by a preponderance of the evidence, it is reliable. *In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 744 (3d Cir. 1994)*.

To aid the trial courts in their determination of whether an expert's testimony is reliable, the Supreme Court in *Daubert* set forth four non-exclusive factors for the courts to consider: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community. *Daubert, 509 U.S. at 593-94*; see also, *First Tennessee Bank Nat. Ass'n v. Barreto, 268 F.3d 319, 334 (6th Cir. 2001)*.

In addition, the court may consider "whether the experts are proposing to testify about matters growing naturally and [*51] directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying" because the former "provides important, objective proof that the research comports with the dictates of good science." *Smelser v. Norfolk Southern Railway, 105 F.3d 299, 303 (6th Cir. 1997)*.

The Supreme Court in *Kumho Tire* emphasized that, in assessing the reliability of expert testimony, whether scientific or otherwise, the trial court may consider one or more of the *Daubert* factors when doing so will help determine that expert's reliability. *Kumho Tire, 526 U.S. at 150*. The test of reliability is a "flexible" one, however, and the *Daubert* factors do not constitute a "definitive checklist or test," but must be tailored to the facts of the particular case. *Id.* (quoting *Daubert, 509 U.S. at 593*); see also *Ellis v. Gallatin Steel Co., 390 F.3d 461, 470 (6th Cir. 2004)*. The particular factors will depend upon the unique circumstances of the expert testimony at issue. See *Kumho Tire, 526 U.S. at 151-52*. As the Advisory Committee observed,

[s]ome types of expert testimony will not rely on anything like a scientific method, and so will [*52] have to be evaluated by reference to other standard principles attendant to the particular area of expertise. The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so . . . .

Nothing in [the Rule] is intended to suggest that experience alone - or experience in conjunction with other knowledge, skill, training or education - may not provide a sufficient foundation for expert testimony. To the contrary, the text of *Rule 702* expressly contemplates that an expert may be qualified on the basis of experience. In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony. . . .

If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires [*53] more than simply "taking the expert's word for it." . . . The more subjective and controversial the expert's inquiry, the more likely the testimony should be excluded as unreliable.

*Fed. R. Evid. 702* Advisory Committee's Note (2000 amendment) (citations omitted).

The second prong of the gate-keeping role requires an analysis of whether the expert's reasoning or methodology can be properly applied to the facts at issue, that is, whether the opinion is relevant. See *Daubert, 509 U.S. at 591-93*. This relevance requirement ensures that there is a "fit" between the testimony and the issue to be resolved by the trial. See *United States v. Bonds, 12 F.3d 540, 555 (6th Cir. 1993)*. Thus, an expert's testimony is admissible under *Rule 702* if it is predicated upon a reliable foundation and is relevant.

Although a witness may be qualified as an expert in one area of expertise, the expert may be precluded from offering opinions beyond that area of expertise or which are not founded on a reliable methodology. *See, e.g.,*

*Kumho Tire, 526 U.S. at 154-55*; *Allison v. McGhan Medical Corp., 184 F.3d 1300, 1317-19 (11th Cir. 1999)*; *Weisgram v. Marley Company, 169 F.3d 514, 518 (8th Cir. 1999)*; *Cummins v. Lyle Indus., 93 F.3d 362, 371 (7th Cir. 1996)*.

The [*54] rejection of expert testimony, however, is the exception rather than the rule, and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Fed. R. Evid. 702* advisory committee's notes (2000 amendment) (quoting *United States v. 14.38 Acres of Land, 80 F.3d 1074, 1078 (5th Cir. 1996))*. Finally, the proponent of the evidence has the burden of establishing that all of the pertinent admissibility requirements are met by a preponderance of the evidence. See *Fed. R. Evid. 104(a)*; see also *Bourjaily v. United States, 483 U.S. 171, 175-76, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987)*; *Smelser, 105 F.3d at 303*; *West Tenn. Chapter of Associated Builders and Contractors, Inc. v. City of Memphis, 300 F. Supp. 2d 600, 602-03 (W.D. Tenn. 2004)*.

STMC contends that Dr. Markowitz is not qualified to proffer an expert opinion regarding the standard of care required in a hospital with respect to policies and procedures concerning the removal of epidural catheters. STMC Mots. in Limine at 44-47. It also contends that Darla Ura, R.N. is not qualified to proffer an opinion regarding the standard of care with respect to nursing education and policies and procedures. [*55] *Id.* at 50. It requests that the Court exclude testimony from both witnesses pursuant to *FRE 104(a)*.

Plaintiffs contend that Dr. Markowitz is qualified to testify as an expert with respect to the standard of care for hospital administration and the interaction between the hospital and medical staff. Court Doc. 303, Pls.' Resp. to STMC Mot. in Limine at 2-3. Plaintiffs further contend that Dr. Markowitz is not statutorily barred from providing expert testimony relating to hospital administration because there is no requirement that a hospital administrator be licensed by the state of Tennessee. *Id.*

Plaintiffs also point that Dr. Markowitz's proffered testimony is only relevant to the issue of whether STMC departed from the standard of care by not having an administrative procedure governing the insertion, removal, and use of epidural catheters at the hospital. This opinion, which relates to the administrative duties of a hospital, does not encompass the statutory requirements of *Tenn. Code. Ann. § 29-26-115* because there is no requirement that a hospital administrator be licensed by the state of Tennessee.

Plaintiffs also proffer significance evidence that Dr. Markowitz's "knowledge, skill, [*56] expertise, training, [and] education" qualify him to opine on the standard of care as it relates to hospital administration, including development and enforcement of policies and procedures relating to patient care. Pls.' Resp. to STMC's Mots. in Limine at 4-11. In addition to Dr. Markowitz's educational background which includes post-baccalaureate degrees in the field, Plaintiffs have proffered evidence that Dr. Markowitz has spent over thirty years working as a hospital administrator, worked on the development of policies and procedures that relate to patient care, and was a Fellow of the American College of Health Care Executives. *Id.*

Having reviewed the evidence, the Court finds that Plaintiffs have made a sufficient proffer for the Court to allow Dr. Markowitz's expert testimony within the limited scope of hospital administration as it relates to the development of policies and procedures governing patient care. Defendant STMC is entitled to vigorously cross-examine the substance of Dr. Markowitz's experience in this area, which may go to the weight of his testimony. *U.S. v. Bonds, 12 F.3d 540, 563 (6th Cir. 1993)*. [1]

Next, Plaintiffs contend that Darla Ura is well-qualified to offer opinions with regard to the hospital administration, including policy and procedure, as it relates to nursing care and hospital administration, including policies and procedures that relate to nursing. Plaintiffs' briefing contains extensive evidence that Ms. Ura is indeed qualified to testify as an expert in this limited context. *See* Pls.' Resp. to STMC Mot. in Limine at 12-18. Defendants are entitled to cross-examine Mr. Ura's to test her expertise regarding the standard of care as it relates to nursing care and hospital administration, including policies and procedures that relate to nursing. *See Daubert, 509 U.S. at 596* ("Vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Accordingly, the Court will **DENY** Defendant STMC's Motion in Limine No. 20.

---

[1] The Court notes, however, that if Plaintiffs, or any party, fail [*57] to establish the foundation for their experts at trial, Defendant STMC may raise its objection to the admissibility of this expert testimony.

### E. Defendants OSMC and Dolores K. White, D.O.'s Motions in Limine

#### 1. Motion in Limine [*58] No. 1 (Court Doc. 243)

Defendants OSMC and Dolores K. White, D.O. request that the Court exclude all evidence and/or reference to the presence or absence of liability insurance in this case. Plaintiffs filed no opposition to the instant motion.

Rule 411 of the Federal Rules of Evidence excludes evidence that a party is covered by liability insurance when offered to show that the insured acted "negligently or otherwise wrongfully." 23 Wright & Miller, *Federal Practice and Procedure*, § 5364 at 448-49 (1st ed. 1980). It provides:

> "Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency ownership, or control, or bias or prejudice of a witness."

Fed. R. Evid. 411.

Accordingly, the Court will **GRANT** Defendants OSMC and Dolores K. White, D.O.'s Motion in Limine No. 1. (Court Doc. 243.)

#### 2. Motion in Limine No. 2 (Court Doc. 244)

Defendants OSMC and Dolores K. White, D.O. request that the Court disallow any testimony that Bette Donathan's injuries create a presumption [*59] of negligence on the part of Dr. White, OSMC, or any other health care provider. Plaintiffs have indicated no opposition. It is true that "the mere occurrence of an injury does not prove negligence" and a plaintiff must meet his or her burden to prove the requisite elements encompassed in Tennessee's negligence statute. See Tenn. Code. Ann. § 29-26-115(a); Kilpatrick v. Bryant, 868 S.W. 2d 594, 598 (Tenn. 1993). Accordingly, the Court will **GRANT** Defendants OSMC and Dolores K. White, D.O.'s Motion in Limine No. 2. (Court Doc. 244.)

#### 3. Motion in Limine No. 3 (Court Doc. 245)

Defendants OSMC and Dolores K. White, D.O. request that the Court exclude all evidence or testimony from medical witnesses regarding that witness' personal practice, personal standard, or what "he/she would do" under certain circumstances or at a particular hospital. Plaintiffs oppose the instant motion and contend such evidence is relevant to understanding the foundation of the witness' testimony on the standard of care and could be used for impeachment.

The Court finds that the evidence regarding the personal practices of an expert is necessary to establish foundation for the testimony of an expert witness. See Mannino v. Int'l Mfg. Co., 650 F.2d 846, 851 (6th Cir. 1981) [*60] ("The only thing a court should be concerned with in determining the qualifications of an expert is whether the expert's knowledge of the subject matter is such that his opinion will likely assist the trier of fact in arriving at the truth. The weight of the expert's testimony must be for the trier of fact."). A trier of fact could discount the testimony of an expert with personal knowledge of the standard of care if that expert regularly departs from it in his or her own practice. Accordingly, the Court will **DENY** Defendants OSMC and Dolores K. White, D.O.'s Motion in Limine No. 3. (Court Doc. 245.)

#### 4. Motion in Limine No. 4 (Court Doc. 246)

Defendants OSMC and Dolores K. White, D.O. request that the Court exclude all day-in-the-life videotapes and all other graphic representations of Bette Donathan's injuries from trial. In the alternative, Defendant OSMC and Dolores K. White, D.O. request that the Court exclude the audio included in videotapes and to limit photographs of Plaintiff Bette Donathan, both prior to, and post-injury. As discussed *supra*, the Court finds that such evidence is relevant to the issue of damages; however, the Court also finds that the instant motion to be premature [*61] and the issue dependent on the whether certain witnesses testify, namely Plaintiffs Bette Donathan and Ben Donathan. Accordingly, the parties are **ORDERED** to raise any evidentiary objections relating to this motion in limine during the course of trial, and the Court will **RESERVE RULING** on the admissibility of the evidence at issue in this motion until such an objection is made.

#### 5. Motion in Limine No. 5 (Court Doc. 247)

Defendants OSMC and Dolores K. White, D.O. request the Court to prohibit Plaintiffs from cross-examining Dr. White or Dr. White's witnesses regarding previous

and/or pending medical malpractice cases. As discussed *supra,* the Court finds the instant motion to be premature and the issue dependent on witnesses' testimony. Accordingly, the parties are **ORDERED** to raise any evidentiary objections relating to this motion in limine during the course of trial, and the Court will **RESERVE RULING** on the admissibility of the evidence at issue in this motion until such an objection is made.

### 6. Motion in Limine No. 6 (Court Doc. 248)

Defendants OSMC and Dolores K. White, D.O. request that the Court exclude all evidence and/or reference to the following statements or testimony concerning [*62] past/future medical expenses incurred or paid on behalf of Bette Donathan: (1) the reasonableness and necessity of the claimed medical expenses; (2) medical expenses not occasioned by the claimed negligence of the Defendants are not recoverable; and (3) the plaintiff may only seek recovery of "paid" or "payable" medical expenses. The Court finds the instant motion to be premature and the issue dependent on witnesses' testimony. Accordingly, the parties are **ORDERED** to raise any evidentiary objections relating to this motion in limine during the course of trial, and the Court will **RESERVE RULING** on the admissibility of the evidence at issue in this motion until such an objection is made.

### 7. Motion in Limine No. 7 (Court Doc. 249)

Defendants OSMC and Dolores K. White, D.O. request that the Court exclude all testimony of Suzanna Greenwell, CRNA, regarding matters outside of her expertise, namely opining on the standard of care applicable to an orthopaedic surgeon. Plaintiffs do not oppose the instant motion. Accordingly, the Court will **GRANT** Defendants OSMC and Dolores K. White, D.O.'s Motion in Limine No. 9. Ms. Greenwell's expert testimony shall only encompass the standard of care as it [*63] relates to the duties of a certified registered nurse anaesthetist.

### 8. Motion in Limine No. 8 (Court Doc. 250)

Defendants OSMC and Dolores K. White, D.O. request that the Court exclude all testimony from Dr. Terry Winkler that encompasses the emotional consequences of the injury on Plaintiffs Bette and Ben Donathan and the impact the injury had on their daily lives. The Court finds the instant motion to be premature and the issue dependent on a witness' testimony. Accordingly, the parties are **ORDERED** to raise any evidentiary objections relating to this motion in limine during the course of trial, and the Court will **RESERVE RULING** on the admissibility of the evidence at issue in this motion until such an objection is made.

### 9. Motion in Limine No. 9 (Court Doc. 251)

Defendants OSMC and Dolores K. White, D.O. request that the Court exclude all testimony by Dr. Roy Michael, anesthesiologist, from testifying regarding the standard of care of orthopedic surgery because such opinions are outside the scope of his expertise. The Court finds the instant motion to be premature and the issue dependent on a witnesses' testimony. Accordingly, the parties are **ORDERED** to raise any evidentiary objections [*64] relating to this motion in limine during the course of trial, and the Court will **RESERVE RULING** on the admissibility of the evidence at issue in this motion until such an objection is made.

### 10. Motion in Limine No. 10 (Court Doc. 252)

Defendants OSMC and Dolores K. White, D.O. request that the Court exclude all testimony from Dr. Bhole on the grounds that he does not qualify as an expert under the locality rule, namely that he lacks knowledge of the standard of care in a community similar to that in which the Defendants practice. *Tenn. Code Ann. § 29-26-115(a)* sets forth a plaintiff's burden in a medical malpractice action, of proving:

> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

*Subsection (a)(1)* [*65] is commonly referred to as the "locality rule," which requires that a "medical expert relied upon by the plaintiff must have knowledge of the standard of professional care in the defendant's applicable community *or* knowledge of the standard of professional care in a community that is shown to be similar to the defendant's community." *Robinson v.*

*LeCorps, 83 S.W.3d 718, 724 (Tenn. 2002).*

Case law has further shaped the contours of the locality rule. The expert must present facts demonstrating how he or she has knowledge of the applicable standard of professional care either in the community in which the defendant physician practices or in a similar community. *Spangler v. East Tenn. Baptist Hosp., No. E1999-01501-COA-R3-CV, 2000 Tenn. App. LEXIS 121, 2000 WL 222543, at \*1-2 (Tenn. Ct. App. Feb. 28, 2000)* perm. app. denied (Tenn. Sept. 11, 2000). For instance, the expert must go further than simply asserting that he or she is familiar with the applicable standard of care. *Mabon v. Jackson-Madison County Gen. Hosp., 968 S.W.2d at 831.* However, as the Tennessee Court of Appeals explained in *Kenyon v. Handal, 122 S.W.3d 743, 761-62 (Tenn. Ct. App. 2003)*, the expert is not required to be familiar [*66] with all the medical practices of the community where the physician practices. *Ledford v. Moskowitz, 742 S.W.2d 645, 648 (Tenn. Ct. App. 1987).*

For the purpose of *Tenn. Code Ann. § 29-26-115(a)*, the only relevant "community" is the community in which the defendant physician actually practices or in a similar community. *Tilley v. Bindra, No. W2001-01157-COA-R3-CV, 2002 Tenn. App. LEXIS 349, 2002 WL 1000196, at \*4-5 (Tenn. Ct. App. May 13, 2002)* perm. app. denied (Tenn. Nov. 4, 2002); *Howell v. Baptist Hosp., 2003 Tenn. App. LEXIS 21, 2003 WL 112762, at \*8* (holding that an affiant's assertion of familiarity with the applicable standard of professional practice in "Middle Tennessee" did not provide a basis for testifying regarding the standard of professional practice in Nashville).

The Court finds the instant motion to be premature and the issue dependent on a witness' testimony. Accordingly, the parties are **ORDERED** to raise any evidentiary objections relating to this motion in limine during the course of trial, and the Court will **RESERVE RULING** on the admissibility of the evidence at issue in this motion until such an objection is made.

**11. Motion in Limine No. 11 (Court Doc. 253)**

Defendants [*67] OSMC and Dolores K. White, D.O. request that the Court exclude Dr. Bhole's testimony that encompasses any literature that pertains to any fact or issue in this lawsuit. Plaintiffs did not file any opposition, but the Cumberland Defendants Healthcare did oppose the instant motion to the extent such testimony is used on cross examination or to impeach his testimony pursuant to *Rule 607* and *Rule 803(18) of the Federal Rules of Evidence.* The Court finds the instant motion to be premature and the issue dependent on a witness' testimony. Accordingly, the parties are **ORDERED** to raise any evidentiary objections relating to this motion in limine during the course of trial, and the Court will **RESERVE RULING** on the admissibility of the evidence at issue in this motion until such an objection is made.

**11. Motion in Limine No. 12 (Court Doc. 254)**

Defendants OSMC and Dolores K. White, D.O. request that the Court exclude Dr. Bhole's testifying as to the following statements that were not disclosed in his Rule 26 disclosures:

> 1. Dr. White should not have ordered Toradol as it potentiated the acts of the anticoagulation.
> 2. Dr. White failed to communicate with Dr. Stensby regarding anticoagulation.
>
> 3. Dr. [*68] White should have communicated with Dr. Reimers on April 16, 2006, after Dr. Reimers saw the patient mid-day on April 16, 2006.
> 4. Dr. White's number one diagnosis on the differential around noon on April 16, 2006, should have been an epidural hematoma.
>
> 5. Dr. White should have written an order to the nursing staff that if there was any change in the patient's condition, that she should be notified.
> 6. Dr. White should have known that an epidural had been placed in Bette Donathan.
> 7. Dr. White had a responsibility for normalizing Bette Donathan's coagulation values before removal of the epidural.

*Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure* requires, with respect to an expert who has been retained or specially employed to provide expert testimony, the disclosure of "a written report prepared and signed by the witness" which contains:

> a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding [*69] ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the

preceding four years.
Fed. R. Civ. P. 26(a)(2)(B).

Plaintiffs have withdrawn their objection to Statement Two in this motion in limine and Defendants have withdrawn their motion to exclude Statements Four, Five, and Seven. After reviewing Dr. Bhole's Rule 26 disclosure, the Court finds that Statements One, Three, and Six were not properly disclosed and, thus, cannot be addressed during Dr. Bhole's expert testimony. Accordingly, the Court will **GRANT** in part and **DENY** in part Defendant OSMC and Dolores K. White, D.O. (Court Doc. 254). Dr. Bhole's expert testimony may not encompass the opinions stated in Statements One, Two, Three, and Six of this motion in limine.

### III. CONCLUSION

For the reasons explained above, Plaintiffs' Motions in Limine are hereby **GRANTED** in part, **DENIED** in part, and the Court **RESERVES RULING** in part. (Court Doc. 264-271). The Cumberland Defendants' Motions in Limine are hereby **GRANTED** in part, **DENIED** in part, and the Court **RESERVES RULING** in part. (Court Doc. 257-262). The Court will [*70] **RESERVE RULING** on the admissibility of the evidence at issue in Defendant Elizabeth Reimers, M.D.'s Motion in Limine. (Court Doc. 263.) Defendant STMC's Motions in Limine are hereby **GRANTED** in part, **DENIED** in part, and the Court **RESERVES RULING** in part. (Court Doc. 256.) Defendants Defendant OSMC and Dolores K. White, D.O. Motions in Limine are hereby **GRANTED** in part, **DENIED** in part, and the Court **RESERVES RULING** in part. (Court Docs. 243-255.)

**SO ORDERED** this 26th day of October, 2009.

/s/ Harry S. Mattice, Jr.

HARRY S. MATTICE, JR.

UNITED STATES DISTRICT JUDGE

---

End of Document

Colton Richardson