Caution
As of: June 1, 2021 9:14 PM Z

# *Hamilton v. Pike County*

United States District Court for the Eastern District of Kentucky, Southern Division

December 17, 2012, Decided; December 17, 2012, Filed

Civil No. 11-99-ART

**Reporter**
2012 U.S. Dist. LEXIS 178522 *; 90 Fed. R. Evid. Serv. (Callaghan) 179; 2012 WL 6570508

RAY D. HAMILTON, Plaintiff, v. PIKE COUNTY, KENTUCKY, et al., Defendants.

**Subsequent History:** Summary judgment granted, in part, summary judgment denied, in part by, Motion to strike denied by, As moot *Hamilton v. Pike County, 2013 U.S. Dist. LEXIS 18317 (E.D. Ky., Feb. 11, 2013)*

## Core Terms

standard of care, causation, staff's, nurses, patients, expert testimony, jail, qualified to testify, expert witness, training

**Counsel:** [*1] For Ray D. Hamilton, Plaintiff: Gregory Allen Belzley, Prospect, KY.

For Pike County, Kentucky, Rodney Scott, Individually, Defendants: Jeffrey C. Mando, LEAD ATTORNEY, Adams, Stepner, Woltermann & Dusing, PLLC, Covington, KY.

For Southern Health Partners, Inc., Ron Waldridge, M.D. also known as Waldridge, Defendants: Darren T. Sammons, Sammons Law Firm, PSC, Lexington, KY.

For Monica Morris, Individually, Defendant: James E. Davis, LEAD ATTORNEY, James E. Davis & Associates, Mt. Sterling, KY.

For Rose Ray, Individually, Tina Clevenger, Individually, Defendants: Darren T. Sammons, LEAD ATTORNEY, Sammons Law Firm, PSC, Lexington, KY.

For Rodney Scott, as Jailer of the Pike County Detention Center, Official Defendant: Jeffrey C. Mando, LEAD ATTORNEY, Adams, Stepner, Woltermann & Dusing, PLLC, Covington, KY.

For Ron Waldridge, M.D., also known as Waldridge, Official Defendant: Darren T. Sammons, Sammons Law Firm, PSC, Lexington, KY.

For Monica Morris, as Nurse of the Pike County Detention Center & as an Employee of Southern Health Partners, Inc., Official Defendant: James E. Davis, LEAD ATTORNEY, James E. Davis & Associates, Mt. Sterling, KY.

For Rose Ray, as Nurse of Pike County Detention Center [*2] and as an Employee of Southern Health Partners, Inc., Tina Clevenger, as Nurse of the Pike County Detention Center and as an employee of Southern Health Partners, Inc., Official Defendants: Darren T. Sammons, LEAD ATTORNEY, Sammons Law Firm, PSC, Lexington, KY.

**Judges:** Amul R. Thapar, United States District Judge.

**Opinion by:** Amul R. Thapar

## Opinion


EXHIBIT 9

Colton Richardson

*Carmichael, 526 U.S. 137, 152, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999))*.

A district court is not required to hold a *Daubert* hearing when neither party requests one and the Court can perform its gatekeeping function on the basis of the record. See *Nelson, 243 F.3d at 251* (citing *Greenwell v. Boatwright, 184 F.3d 492, 498 (6th Cir. 1999))*; *Jahn v. Equine Servs., PSC, 233 F.3d 382, 393 (6th Cir. 2000)*. Neither party requested a hearing here, and the record is adequate to decide the motion.

### I. LaMarre may not testify about the standard of care applicable to Dr. Waldridge

The Kentucky courts have not squarely addressed the general question of whether a nurse is competent to testify as an expert on the standard of care for physicians.[1] See *Legg v. Chopra, 286 F.3d 286, 289-92 (6th Cir. 2002)* (explaining that state witness competency rules are substantive and therefore controlling under the *Erie* doctrine). One recent case declined to establish a "blanket rule" in the opposite direction—that is, a rule prohibiting a doctor from testifying [*7] as to the standard of care for a nurse. See *Tapp v. Owensboro Med. Health Sys., Inc., 282 S.W.3d 336, 340 (Ky. Ct. App. 2009)*. It did so at least in part because nurses serve at the direction of physicians, so the "physician's area of expertise necessarily encompasses the standard of care applicable to nurses." *Id. at 341* (quotation omitted). The same cannot be said about nurses, who are usually not permitted to diagnose patients or treat them without orders from a physician. See *id*. Even so, there is no clear per se rule in Kentucky against nurses testifying as to a physician's standard of care.

Because Kentucky law does not bar LaMarre's testimony, the question becomes whether she is qualified to testify about Dr. Waldridge's standard of care in this case. See *Fed. R. Evid. 702* (an expert may be qualified through "knowledge, skill, experience, training, or education"). LaMarre is a licensed nurse with a master of nursing degree. R. 44-1 at 1, 5. She is a consultant to correctional agencies. In that position, she helps those agencies develop strategies to comply with professional standards and settlement agreements. *Id.* at 1. The last time she practiced nursing was from 2005 to 2007, when she worked with female HIV-positive inmates. *Id.* Before that, she was a nurse practitioner for the Georgia Department of Corrections [*9] from 1984 to 1985. *Id.* at 2.

LaMarre is not qualified to offer an expert opinion on the standard of care required in Hamilton's case. Hamilton had a host of medical problems while at the Pike County Detention Center including: alcohol dependency; high blood pressure; hepatitis C; head, neck, and spinal injuries; chronic back pain; a removed spleen; and blood clots. R. 44-2 at 2. It may be possible that a nurse could obtain the "knowledge, skill, experience, training, or education" required to qualify as an expert on the standard of care required of a doctor treating a patient with Hamilton's symptoms. *Fed. R. Evid. 702*. One can imagine a nurse who specializes in a field (for example cardiology), reads the relevant literature, and works closely with doctors to treat patients on a regular basis. Over time, the nurse might become as qualified to opine on the standard of care her supervising physician must meet as that physician himself. See, e.g., *Savage v. Three Rivers Med. Ctr., 390 S.W.3d 104, 2012 Ky. LEXIS 159, 2012 WL 5274645, at *9 (Ky. Oct. 25, 2012)* (exempting a nurse with "specialized and unique training . . . from the usual rule that nurses will not normally be qualified to present expert testimony [*10] requiring the interpretation of an x-ray"). But LaMarre is not that nurse. First, she has not served as a nurse in a clinical setting for over five years, and when she did she dealt with female HIV-positive inmates. It has been over eighteen years since she served as a nurse in a more general setting where she might have encountered patients like Hamilton. Second, Hamilton has a wide range of ailments, and LaMarre has not spent a prolonged period of time specializing in any of them.

---

[1] Some states courts bar such testimony. See *Sullivan v. Edward Hosp., 209 Ill. 2d 100, 806 N.E.2d 645, 660, 282 Ill. Dec. 348 (Ill. 2004)* (holding that a doctor cannot testify to the standard of care for a nurse because, among other reasons, a nurse cannot testify as to the standard of care of a doctor); *Wooley v. State, 716 N.E.2d 919, 927 (Ind. 1999)* (stating general rule that the standard of care for physicians must be established by other physicians); *Broehm v. Mayo Clinic Rochester, 690 N.W.2d 721, 727 (Minn. 2005)* (allowing nurse to testify on the nursing standard of care but not the physician standard of care); see also [*8] *Waatti v. Marquette Gen. Hosp., Inc., 122 Mich. App. 44, 329 N.W.2d 526, 528 (Mich. Ct. App. 1982)* (holding that a nurse was not qualified to testify as to an emergency medicine physician's standard of care). Some states forbid such testimony by statute. See *Ala. Code. § 6-5-548*; **Ohio R. Evid. 601(D)**; *Tex. Civ. Prac. & Rem. Code § 74.401*. But at least one court has suggested nurses may be competent to offer such testimony. See *Avret v. McCormick, 246 Ga. 401, 271 S.E.2d 832, 833 (Ga. 1980)*.

In response to the motion, Hamilton does not argue that LaMarre is qualified to testify as to Dr. Waldridge's standard of care. Instead, he argues that Dr. Waldridge admitted he violated the standard of care, so the second exception to the requirement of an expert witness applies. R. 54 at 1-3. But the issue here is not whether Hamilton needs an expert witness to establish the standard of care; it is whether LaMarre is qualified to act as one. Hamilton's silence as to LaMarre's qualifications speaks volumes. LaMarre is certainly qualified in the abstract sense of the word. She has worked in the field of medicine, either as a nurse or as a consultant, for over thirty years. But she is not qualified in the [*11] specific sense required here. See *Berry v. City of Detroit, 25 F.3d 1342, 1351 (6th Cir.1994)* ("The issue with regard to expert testimony is . . . whether [a witness's] qualifications provide a foundation for a witness to answer a specific question."). She does not have the "knowledge, skill, experience, training, or education" required to offer an expert opinion on the standard of care required of a physician treating a patient in Hamilton's condition. *Fed. R. Evid. 702*. Therefore LaMarre's testimony as to Dr. Waldridge's standard of care is inadmissible.

## II. LaMarre may not testify about medical causation.

LaMarre's report states that the medical staff's actions "nearly cost [Hamilton] his life, and resulted in demonstrable harm and avoidable pain and suffering . . . ." R. 44-2 at 9. [2] The defendants argue that as a nurse, LaMarre may not testify as an expert to establish "causation of Plaintiff's alleged medical conditions." R. 44 at 2-3. Hamilton responds that LaMarre's report states only that the medical staff's actions harmed him and nearly cost him his life. The report, according to Hamilton, does not state that the medical staff's actions caused any specific medical condition. [*12] R. 54 at 3. The fact that LaMarre stated only the general effect of the defendants' negligence does not mean that she did offer an opinion regarding causation. Quite the opposite. Her statement that the defendants' conduct "nearly cost [Hamilton] his life and resulted in demonstrable harm" is necessarily a claim that their negligence caused his injuries. R. 44-2 at 9. The defendants could not have "cost" Hamilton anything if they were not the cause of his suffering. So LaMarre's opinion on "harm" is also an opinion on causation.

The Kentucky courts also have not directly addressed the question whether a nurse is competent to testify as an expert on causation. One court noted "[a]s an aside" that some courts have held "as a matter of law, that nurses are not qualified to give expert opinion testimony regarding medical causation in medical negligence case." *Rogers v. Integrity Healthcare Servs., Inc., 358 S.W.3d 507, 512 & n.4 (Ky. Ct. App. 2012)* (finding nurse not qualified to testify as an expert on other grounds). In fact, "the majority rule [is] [*13] that nursing experts cannot opine as to medical causation and are unable to establish . . . proximate cause." *Vaughn v. Miss. Baptist Med. Ctr., 20 So. 3d 645, 652 (Miss. 2009)* (citing cases from Tennessee, Washington, Indiana, Alabama, and the Eastern District of Kentucky); see also *Gaines v. Comanche Cnty. Med. Hosp., 2006 OK 39, 143 P.3d 203, 216 (Okla. 2006)* (allowing a nurse to testify as to the cause of bedsores but noting that the "nurse [was not] giving expert testimony against a physician"). But see *Freed v. Geisinger Med. Ctr., 601 Pa. 233, 971 A.2d 1202, 1212 (Pa. 2009)* ("[A]n otherwise competent and properly qualified nurse [may give] expert opinion testimony regarding medical causation . . . ."). The logic behind the rule is that nurses generally are not licensed to diagnose patients. Because nurses do not determine the medical cause of patients' symptoms, they will not have the required expertise to testify about causation.

But this Court does not need to resolve that question because even if Kentucky law allows LaMarre to testify as to causation, she is not qualified to do so. Hamilton was admitted to the Pikeville Medical Center and diagnosed with a series of problems including: kidney failure, [*14] muscle deterioration, high blood sugar, hematomas, high blood pressure, and an altered mental state. R. 44-2 at 6. LaMarre is not qualified to testify as to the cause of these illnesses for the same reason she is not qualified to testify as to the standard of care. Hamilton has not established that she has experience, remote or recent, diagnosing these specific illnesses. Therefore Hamilton has not met—or even made any real effort to meet—his burden of proving that LaMarre's testimony as to causation is admissible.

## CONCLUSION

Accordingly, it is **ORDERED** that the medical defendants' motion *in limine*, R. 44, is **GRANTED**. Madeline LaMarre may not testify about 1) whether Dr.

---

[2] LaMarre does not opine on whether the nurses' actions alone caused Hamilton's injuries, but instead refers to the medical staff as a whole.

Waldridge breached the standard of care and 2) whether the medical staff's actions caused a specific medical condition.

This the 17th day of December, 2012.

**Signed By:**

*Amul R. Thapar*

**United States District Judge**

End of Document

Colton Richardson