## IN THE NORTHERN DISTRICT OF OKLAHOMA
## UNITED STATES OF AMERICA

PHILIP SANDERS, an Individual and
Husband and Next of Kin of BRENDA
JEAN SANDERS, Deceased,

      Plaintiff,

v.

TURN KEY HEALTH CLINICS, a
limited liability company,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.   17-cv-492-JED-CDL

Attorney Lien Claimed
Jury Trial Demanded

---

## MOTIONS IN LIMINE OF DEFENDANT TURN KEY HEALTH CLINICS, LLC

---

COMES NOW Defendant, Turn Key Health Clinics, LLC, (hereinafter "Defendant" or "Turn Key"), and respectfully ask this Court for an Order instructing Plaintiff, Plaintiff's counsel, Plaintiff's witnesses, or any other party from introducing evidence, making argument, mentioning, referring to, or attempting to otherwise convey to the jury in any manner, directly or indirectly, actually or implicitly any of the following statements or information:

1. **Opinions and criticism grounded in negligence.**

When medical care is provided, and there is only a disagreement as to whether the proper care was provided, the case sounds in tort and does not rise to the level of a civil rights claim. *Estelle v. Gamble*, 429 U.S. 97, 110, 97 S. Ct. 285, 294, 50 L. Ed. 2d 251 (1976). Where there is no allegation of a total denial of care, but rather plaintiff disagrees with the care provided, the civil rights claim fails. *Kermicle v. Day,* 428 F.Supp.16 (10th. Cir. 1976). An inadvertent failure to provide adequate medical care does not rise to the level of "wanton infliction of pain" necessary to sustain plaintiff's burden of proof for denial of the right to medical care. *Estelle*, at 105. A negligent failure to diagnose a medical condition also does not rise to the level of a constitutional violation. *Id*. Failure to provide a test or failure to transfer to an outside facility does not rise to the level of a civil rights violation. *Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976). Performance of a cursory examination does not rise to the level of a civil rights violation. *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008). Delay in transfer to another facility does not constitute a violation. *Redding v. Marsh*, 750 F.Supp.473, 479 (E.D.Okl.1990). Whether an alternative method of treatment was appropriate is a question of negligence, not of constitutional violation. *Redding v. Marsh*, 750 F.Supp.473, 478 (E.D.Okl.1990). Whether a specialist should have been called in sooner is a question of negligence, not a constitutional violation. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). Whether a medical provider made the

right decision concerning a medical diagnosis or treatment is a question of negligence law which does not rise to the level of a constitutional deprivation. *Redding v. Marsh*, 750 F.Supp.473, 479 (E.D.Okl.1990).

### a. Dr. Lawrence's position on the medical care provided to Brenda Sanders is that it was negligent at most.

In this case, Plaintiff retained an expert witness, Dr. Susan Lawrence, to author a report and offer testimony in which she criticizes Turn Key. At her deposition, Dr. Lawrence testified generally that Turn Key provided negligent care:

> Q. Would it be more accurate to say that, in your opinion, Turn Key provided --
> did not provide adequate care to -- Brenda Sanders rather than no care?
> A. They provided negligent care. **They provided negligent care rather than no care**.

Lawrence Dep. 193:6-15. (emphasis added). Such testimony for the purposes of deliberate indifference would cause confusion as to the proper burden for a constitutional violation and should not be allowed. Negligence does not rise to the level of a constitutional violation, and it is improper for Dr. Lawrence to present evidence of negligence and/or arguments grounded in negligence for the purposes of the deliberate indifference standard. Turn Key asks this Court to prohibit Dr. Lawrence's testimonial criticisms and criticisms in her expert report, in their entirety, as by her own words, her criticisms rise only to the level of negligence.

### b. Dr. Lawrence's Report

Should the Court disagree with a blanked prohibition of Dr. Lawrence's criticisms, the Court should still prohibit the criticisms which are specifically couched and grounded in negligence. Dr. Lawrence testified that she stands by her Expert Report that was submitted in this case. (Ex. 1, Lawrence Dep., at 172:6-14). In her report, Dr. Lawrence clearly identifies the criticisms that are grounded in deliberate indifference, or a violation of §1983. (Ex. 2, Lawrence

Report, at 11-16). Notably, in her report, Dr. Lawrence starts a new section wherein the constitutional deliberate indifference criticisms come to an end, and a new section begins entitled "II. The medical care provided by Turn Key to Mrs. Sanders was negligent and fell beneath the standard of care." (Id. at 16). In this negligence section, Dr. Lawrence goes on to offer the following criticisms of Turn Key's policies and procedures. In so doing, Plaintiff's own expert has conceded that any alleged deficiency in a Turn Key policy arises to negligence at the most, and therefore such alleged deficiencies fail to rise to the deliberate indifference standard.

In her report, Dr. Lawrence criticizes Turn Key's Intake Health Screening J-9 policy, and the terms of Turn Key's contract with Creek County Jail, for not mandating that inmates are seen by a Registered Nurse, midlevel provider, or a physician, within fourteen (14) days of their intake at the Creek County Jail. (Id., at 17). Dr. Lawrence's report goes on to speculate that if Ms. Sanders had received a **physical examination** from a Registered Nurse, midlevel provider, or a physician, she might have been referred for **laboratory and X-Ray testing**, and might have had a different outcome. (Id.). Dr. Lawrence concludes her discussion regarding by specifically listing the legal elements of negligence, including breach of care, direct cause, and proximate cause: "To a reasonable degree of medical certainty, it is my opinion that *this breach of care* caused the delay in diagnosing and treating Mrs. Sanders' diarrhea and altered mental status, culminating in severe sepsis and multiorgan failure. Mrs. Sanders' death is a *direct and proximate cause of the defendants' breach of care.*" (Id., at 18) (emphasis added). Moreover, at her deposition, Dr. Lawrence testified to the following:

> Q. Were the medical providers in this case negligent in their lack of providing medical care to Mrs. Sanders?
> A. Yes, they were.   They were.   The standard of care for someone with a chronic medical problem is you do a -- you develop a treatment plan, you do an assessment, **you do a physical examination, laboratory testing, X-ray testing**. And she, you know, received none of that. So that fell beneath the standard of

care and **was negligent**.

Exhibit 1, Lawrence Dep. 184:25-185:1-9. (emphasis added). Thus, Dr. Lawrence's criticism that Turn Key's Intake Health Screening Policy J-9 and the terms of its contract with Creek County Jail were insufficient because they did not mandate that inmates be medically assessed by a Registered Nurse, midlevel provider, or a physician, within fourteen (14) days of their intake at the Creek County Jail, is grounded in negligence and should not be offered for the purposes of showing a constitutional violation and/or evidence of deliberate indifference.

Next, Dr. Lawrence's report criticizes Turn Key's alleged failure to obtain past medical records from Mrs. Sanders' healthcare providers. (Id., at 18-19). Specifically, Dr. Lawrence opines the nurse who performed Ms. Sanders' initial intake screening failed to follow Turn Key's Continuity of Care/Referrals Policy J-20, because he allegedly failed to have Ms. Sanders execute a medical release form and fax it to her previous medical providers. (Id., at 18-19). Once again, Dr. Lawrence's criticisms are grounded in negligence and should not be offered for the purposes of showing a constitutional violation and/or evidence of deliberate indifference.

Dr. Lawrence's report goes on to criticize Turn Key's alleged failure to develop an individualized treatment plan for Mrs. Sanders. (Id., at 19). However, a close reading of this section shows that it is not a criticism of any individual Turn Key policy or custom. Instead, Dr. Lawrence is critical that Ms. Sanders was not categorized and treated as a **chronic disease patient with an individualized treatment plan – this is a criticism of the nurse's medical judgment**. Again, according to her own report, this criticism is that of negligence, not a constitutional violation. And again, Dr. Lawrence testified that this criticism constitutes mere negligence:

> Q. Were the medical providers in this case negligent in their lack of providing medical care to Mrs. Sanders?

A. Yes, they were.  They were.  The standard of care for someone with a **chronic medical problem** is you do a -- you **develop a treatment plan**, you do an assessment, you do a physical examination, laboratory testing, X-ray testing. And she, you know, received none of that. So that fell beneath the standard of care and **was negligent**.

Exhibit 1, Lawrence Dep. 184:25-185:1-9. (emphasis added).

Finally, Dr. Lawrence's report goes on to criticize Turn Key's alleged failure to create and maintain a confidential health record for Mrs. Sanders. (Ex. 2, Lawrence Report, at 20). Here, Dr. Lawrence's opinion is that the Turn Key staff failed to document Ms. Sanders' alleged diarrhea and altered mental status. However, as is fully addressed in Turn Key's Motion for Summary Judgment, the evidence in this case shows that Ms. Sanders never complained of diarrhea or an altered mental status, and no Turn Key employee was ever aware of said signs or symptoms. (See generally, Turn Key's Motion for Summary Judgment, filed separately). Nevertheless, Dr. Lawrence's criticism that Turn Key allegedly failed to create and maintain a confidential health record for Mrs. Sanders, arises to negligence at the most, and therefore such alleged deficiencies fail to rise to the deliberate indifference standard.

Dr. Lawrence's specific criticisms listed in the negligence section of her expert report, should be prohibited for purposes of deliberate indifference.

### c.  Dr. Lawrence's Testimony

In addition to her report, Dr. Lawrence testified to additional, specific criticisms grounded in negligence, which should be prohibited. Dr. Lawrence testified to that it was negligent for the Turn Key nurses not to notify midlevel providers, and specifically failing to notify midlevel provider regarding glaucoma.

Q. Okay. And based on what an LPN or an RN should be able to perform in carrying out their duties, did the RNs and LPNs in this case fall below the standard of the care that they should be providing?
A. Yes. In this case I don't believe there were any RNs. I think they were all

LPNs. And they did fall beneath the standard of care because, whether they choose to admit it or not, Mrs. Sanders had **serious health issues that needed to be reported to a medical provider for further treatment**. That is within the scope of practice of a nurse -- of an LPN, and that did not happen. At least it -- and when it did happen with regard to her eye, her complaint that she had **glaucoma** and she couldn't see out of her eye, when that was reported to the mid-level provider, the only thing that was prescribed was eye drops, and there was no effort to make an appointment for her to see the mid-level provider, to evaluate her to see if she needed to see an eye specialist. You know, glaucoma is a serious medical problem. So, yes, they fell beneath the standard of care and were **negligent** by failing to report concerns about serious health issues to a mid-level provider or the physician.

Exhibit 1, Lawrence Dep. 186:5- 187:6. (emphasis added).

Dr. Lawrence testified regarding the alleged failure to recognize certain symptoms, specifically yellowing of the eyes (scleral icterus), was negligent:

Q. (By Ms. Thompson) And why would you state that with regard to those two particular nurses?
A. Well, because on 10/27/16 she stated she had **glaucoma** and couldn't see, and that issue was never elevated to a reporting to the mid-level provider. So she never got evaluation or care for that. And the other one, three days before she died when she, you know, certainly had obvious scleral icterus, Nurse Ferris put drops 15 in her eyes, looked right in her eyes and didn't report any **scleral icterus**.

***

I would say those -- those two situations were -- fell beneath the standard of care and were **negligent**.

Exhibit 1, Lawrence Dep. 194:5-22. (emphasis added).

Dr. Lawrence's opinions regarding the alleged negligence of the Turn Key nurses not to notify midlevel providers, specifically failing to notify a midlevel provider regarding glaucoma, and the alleged failure to recognize Ms. Sanders' allegedly yellow eyes (scleral icterus), should be prohibited as improper as evidence of deliberate indifference. Accordingly, Plaintiff and Plaintiff's expert should not be allowed to offer opinions of negligence for purposes of the deliberate indifference standard.

2.  **The Creek County EMSA narrative report**

Plaintiff's counsel in this case intends to rely on the Creek County EMS narrative report, which states Ms. Sanders had been having constant diarrhea and deteriorating for approximately two weeks, which is based entirely on hearsay. Problematically, the information regarding Ms. Sanders' recent medical history, contained in the narrative report did not come from any medically trained healthcare provider. In fact, the patient's historian was a detention officer, who implied Plaintiff's symptoms and health went untreated and or ignored during Ms. Sanders's incarceration. The Creek County EMS narrative report stated "[Ms. Sanders] had been moved to the front of the jail a few days ago due to [Ms. Sanders] having constant diarrhea and they put her in a cell alone" but didn't specifically identify who allegedly made this statement. (Exhibit 3, St. John's Med Recs, at SANDERS_00052). The Creek County EMS narrative report also stated "an employee stated that [Ms. Sanders] has been deteriorating for the past few weeks, describing [Ms. Sanders] as becoming more altered as of today . . .", but it didn't specifically identify who allegedly made this statement either. (Exhibit 3, St. John's Med Recs, at SANDERS_00052). However, not a single medical record states Ms. Sanders was ever experiencing diarrhea.

When the Creek County EMS came to the Creek County Jail on the morning of November 20, 2016, at 11:00am, the Turn Key nurse on duty was LPN Tamara Jackson. Nurse Jackson was a float nurse who had never worked at the Creek County Jail before; thus, Nurse Jackson did not have any personal, first-hand knowledge of Ms. Sanders' medical history. (Exhibit 4, Jackson Dep., 97:3-5). The evidence in this case, by way of sworn testimony, shows that it was Jail Supervisor Lindsey Foster, and not a Turn Key employee, who told the Creek County EMS crew that Ms. Sanders had been having constant diarrhea, deteriorating for the past few weeks, and was becoming more altered. (Exhibit 5, Foster Dep., at 29:14-30:1; 80:).

The EMS report carries only as much weight as the observations of the non-medically trained Lindsey Foster. Moreover, the non-party detention officer's knowledge does not impute to any of the nurses or medical staff of Turn Key, and each of Ms. Sanders' treating nurses testified that they were never aware that she had diarrhea. The EMS providers' note is only as accurate as the source of information upon which it is based; thus, for purposes of documenting an alleged history of diarrhea, the EMS report is meaningless. The member of the EMS crew who authored this narrative report was not deposed, thus the report has not been authenticated according to the rules of evidence. As such, Plaintiff's evidence of hearsay is not only improper but is not supported by any of the admissible evidence. The narrative report would clearly be hearsay pursuant to Fed. R. Evid. 801 and 802 and would not fall under any of the Hearsay exceptions under Fed. R. Evid. 803-807. Accordingly, this Defendant requests this Court issue an order forbidding the Creek County EMS narrative report to be admitted.

### 3. <u>The Possible Existence of Liability Insurance</u>

Defendant specifically moves the Court to instruct counsel for Plaintiff, Plaintiff, and Plaintiff's respective witnesses to refrain from referencing or mentioning, either directly or indirectly, by innuendo, or otherwise, the possible existence of liability insurance. The law does not permit any party to offer evidence of the existence of liability insurance. Although there are exceptions to this evidentiary rule, none of the exceptions apply to the circumstances at hand. (See Fed. R. Evid. 411). Therefore, this Court should enter an order precluding Plaintiff, his counsel, or any witness from inferring or mentioning the existence of liability insurance or any other such coverage at any time during the trial proceedings.

**4.   Financial Condition of the Parties**

Defendant specially moves this Court to instruct Plaintiff to refrain from referring to the financial condition or wealth of or the ability to pay any judgment herein as to Defendant or any statement or suggestion that Plaintiff is struggling to make ends meet. Such statements are completely immaterial to the issues involved, and further, the mere making of such a reference would be extremely prejudicial and harmful to Defendant. "Reference to the wealth or poverty of either party, or reflection on financial disparity, is clearly improper argument." *Garcia v. Sam Tanksley Trucking, Inc*., 708 F.2d 519, 522 (10th Cir. 1983) (citing *United States v. Stahl*, 616 F.2d 30, 33 (2nd Cir. 1980)); *Draper v. Airco, Inc*., 580 F.2d 91, 95 (3rd Cir. 1978); *Eisenhower v. Burger*, 431 F.2d 833, 837 (6th Cir. 1970); see also 12 O.S. §§ 2401-2404. Further, the United States Supreme Court has held "appeals to class prejudice to be highly improper and urged trial courts to be alert to prevent such discourse." Garcia, 708 F.2d at 522 (citing *United States v. Socony Vacuum Oil Co.*, 310 U.S. 150, 239, 60 S.Ct. 811, 851, 84 L.Ed. 1129 (1940)); see also *Whiteley v. OKC Corp*., 719 F.2d 1051, 1055 (10th Cir. 1983) (finding that the financial condition of defendant is only relevant at the punitive damages stage of trial, if necessary). Because any statements and/or references to the financial condition of the parties are improper and prejudicial to Defendant, they should be excluded by an Order from this Court.

**5.   Claims Dismissed during Summary Judgment**

Defendant specifically moves the Court to instruct counsel for Plaintiff, Plaintiff, and Plaintiff's respective witnesses to refrain from referencing or mentioning, either directly or indirectly, by innuendo, or otherwise, any claims that may be dismissed by this Court during summary judgment. Concurrent with the filing of these Motions in Limine, Defendant has filed a pending Motion for Summary Judgment as to all claims alleged by the Plaintiff. If the Court

grants summary judgment on any of the claims in the case, then Plaintiff should be prohibited from presenting argument or evidence at trial about these other claims. If the jury has information that these other claims existed and were dismissed by the Court, but the claims, which are being tried, were not dismissed, the jury may conclude that a legal basis exists to hold Defendant liable for the claims which are proceeding to trial. That some claims were dismissed by the Court and others were not suggests that the claims not dismissed may have merit or that the alleged wrongdoing occurred. Such suggestion is incorrect and is misleading, confusing and unfairly prejudicial to Defendant. Fed. R. Evid. 401- 403.

6. **Hypothetical Questions**

Plaintiff's counsel should not pose hypothetical fact scenarios and questions of nonexpert witnesses. It would be improper for Plaintiff to use these witnesses to elicit hypothetical based legal opinions that would be tantamount to instructing the jury on the law in this case. This is improper and would be unfairly prejudicial to the Defendant. Instructing the jury on the proper considerations is the Court's province, and it should not be invaded by a misuse of these witnesses.

7. **Using a Verdict to "Send a Message"**

Defendant specifically moves the Court to instruct counsel for Plaintiff, Plaintiff, and Plaintiff's respective witnesses to refrain from referencing or mentioning, either directly or indirectly, by innuendo, or otherwise, using a verdict to send a message. The jury's verdict should be based upon the evidence presented to them and the instructions, which they receive from the court. Therefore, Plaintiff should be prohibited from requesting, suggesting, or implying that the jury should "send a message" with their verdict or "show with their verdict what they think about the alleged constitutional violations" or any other similarly prejudicial remark which

requests that the jury decide liability or damages on any factor other than the evidence presented to them at trial. Such comments are unfairly prejudicial and can form the basis of a new trial. *See Moody v. Ford Motor Co*., 506 F.Supp.2d 823, 837-38 (N.D. Okla. 2007) (asking jury to "send a message" with its verdict is improper).

8. **Testimony with regard to a code of silence**

Plaintiff, Plaintiff's witnesses and Plaintiff's counsel must be prohibited from making any reference to any alleged conspiracy/code of silence among healthcare providers, law enforcement officers, correctional officers, or healthcare providers. Any such claim is wholly irrelevant and would cause severe prejudice to the Defendant. Fed. R. Evid. 401-403. Further, there has been no testimony or evidence to support any such claim by the Plaintiff's witnesses or experts. Accordingly, Plaintiff has not offered any witnesses with personal knowledge of such actions. As such, the Defendant respectfully moves this Court for an order prohibiting such testimony.

9. **Unrelated or other cases against the Defendant**

It would be a violation of the Federal Rules of Evidence to put evidence of other lawsuits and other conduct of the Defendant into this case. Fed. R. Evid. 404(b). This has become a common practice among plaintiffs who have filed suit against Turn Key. Accordingly, Defendant urges this Court for a ruling prohibiting Plaintiff from forcing Defendant to defend against the other unrelated litigation at this trial, as this would constitute trial by ambush. Allowing Plaintiff, Plaintiff's counsel, or Plaintiff's witnesses to make statements or introduce evidence regarding other litigation or conduct would distract the jury from the issues at hand, would confuse the jury as to what the claims are in this action, and would effectively allow Plaintiff's counsel to put forth evidence from unrelated claims and litigation, in an improper attempt to sway and inflame the jury in the instant action against the defendant.

Such statements, evidence, and information of unrelated conduct, claims, and lawsuits has no bearing on the disputed issues in this case. Fed. R. Evid. 401(b). Additionally, it would be more prejudicial than probative to allow this testimony to be entered into evidence. Fed. R. Evid. 403. Further, pursuant to Fed. R. Evid. 404, evidence used to show conformity with a particular behavior trait is inadmissible. Therefore, the only purpose for attempting to introduce evidence of other conduct, lawsuits, claims against any Defendant is to inflame the jury on issues which are not related or probative to matters in this case. Defendant respectfully urges this Court to enter an order prohibiting the reference to or the use of any such evidence.

### 10. References to improper standards of care and/or causation

Any reference to standards such as "possibilities" or "it might have been" for causation or standards of care would be clearly incorrect statements of the law and could unfairly confuse the jury. Instead, if Plaintiff intends to refer to standards, he and his attorneys and witnesses should be required to reference proper standards such as "reasonable degree of medical certainty" or "reasonable medical certainty". Fed. R. Evid. 702 (2010). *See Madrigal, et al. v. Mendoza, et. al.*, 639 F.Supp.2d 1026.

### 11. Testimony or evidence regarding the Defendant no longer providing care at Creek County Jail

It would be a violation of the Federal Rules of Evidence to put evidence of Turn Key no longer being contracted to provide medical care at the jail. Fed. R. Evid. 404(b). In this case, Defendant is concerned that the Plaintiff's will attempt to inject testimony suggesting that because Turn Key no longer contracts with Creek County Jail, something untoward occurred to break off the relationship. Such evidence and information has no bearing on the disputed issues in this case. Fed. R. Evid. 401(b). Therefore, such statements by Plaintiff, Plaintiff's attorneys or Plaintiff's witnesses to that effect would be inadmissible speculation and completely irrelevant

to the facts at issue in this case. Additionally, it would be more prejudicial than probative to allow this testimony to be entered into evidence. Fed. R. Evid. 403. Defendant respectfully urges this Court to enter an order prohibiting the use of any such evidence.

### 12. Criticisms not presented by expert testimony

Plaintiff or Plaintiff's counsel should not be allowed to advance criticisms and claims that were not properly disclosed by Plaintiff's expert. It would be error to permit Plaintiff, his counsel or Plaintiff's witnesses to raise issues or to give lay opinions on any medical, nursing, or mental health issue, such as a description of the exact injury, standards of care, causation of the injury, and medical or nursing diagnosis, etc.

Any reference to standards such as "possibilities" or "it might have been" for causation or standards of care would be clearly incorrect statements of the law and could unfairly confuse the jury. Instead, if Plaintiff intends to refer to standards, he and his attorneys and witnesses should be required to reference proper standards such as "reasonable degree of medical certainty" or "reasonable medical certainty". Fed. R. Evid. 702 (2010). *See Madrigal, et al. v. Mendoza, et. al.*, 639 F.Supp.2d 1026.

Clearly, such testimony must come from a qualified expert witness and be based upon a reasonable degree of medical certainty. Likewise, to be allowed to offer that testimony at trial, it must have been properly disclosed as required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(a)(2)(B)(i). Any new opinions or changed opinions would be a surprise and fundamentally unfair to the Defendant at this stage of litigation and in violation of the Defendant's constitutionally protected right to due process.

### 13. Testimony regarding lacking, weakness, or training of Turn Key staff/employees

It is anticipated that Plaintiff will unfoundedly attempt to make representations to the jury

that the Turn Key improperly trained its nurses. Plaintiff has failed to come forward with any evidence throughout the course of discovery to support these claims. As a result, any such a claim is completely unfounded and there is a total lack of evidence that such is true. It is fundamental that allegations of negligence must be supported by sufficient evidence. To date, there has been no evidence whatsoever to indicate or remotely imply that any of these allegations are true. If there is not competent evidence to support the result reached by the trier of fact it is vulnerable to being overturned on appeal. It is not enough for Plaintiff to have a theory regarding these allegations. Plaintiff must have some factual evidence to support for such a theory if it is to be introduced to the jury. Any such claim by Plaintiff would be mere speculation and completely unfounded. As such, the Court should prohibit the discussion of any of these allegations.

**14. Testimony or evidence of negligence or indifference of healthcare providers not specifically named in this lawsuit**

Plaintiff or Plaintiff's counsel should not be allowed to make statements or advance criticisms and claims against care providers that have not been named in this lawsuit. Allowing testimony or evidence of negligence or indifference of non-party care providers would only serve to confuse and mislead the jury while prejudicing the Defendant. Fed. R. Evid. 403.

Established law requires that Plaintiff name individuals who are alleged to have wronged the Plaintiff through indifference. "To state a claim, a complaint must "make clear exactly who is alleged to have done *what to whom." Stone v. Albert*, 338 Fed.Appx. 757, 759 (2009)(quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008). "'Collective allegations against the state' are not sufficient in a §1983 claim; a plaintiff must identify who exactly injured him **and then join that party as a defendant.**" *Id.*

Here, Plaintiff has named Turn Key, and only Turn Key, as a defendant in this case. As such, Plaintiff is limited to the only theory by which a corporate entity, such as Turn Key, may

be sued – the Monell theory of liability. Turn Key, as a corporate entity, can only be found to have been deliberately indifferent under a theory of municipal liability. *Monell v. Dept. of Soc. Serv. Of New York,* 436 U.S. 658, 98 S.Ct. 2018 (1978); *Connick v. Thompson*, 563 U.S. 51, 60, 131 S. Ct. 1350, 1359 (2011).

Plaintiff has had ample opportunity to add Defendants, including any of Turn Key's nurses, and has amended the Complaint in this matter. However, Plaintiff has failed to name additional employees or agents of the Defendant as parties to this action. The law does not allow Plaintiff to make blanket allegations of negligence or indifference to establish corporate or personal liability. Plaintiff should not be allowed to discuss any alleged negligence or indifference on the part of any non-party as such would be irrelevant and prejudicial. Accordingly, this court should disallow statements, insinuation, evidence or testimony regarding such.

### 15. <u>Testimony or evidence regarding settlement or verdicts in other cases</u>

Any reference to any offers of settlement or compromise between all parties regarding any case must be prohibited. Any reference would be an improper attempt to prove liability or the amount of a claim. Fed. R. Evid. 408. Further, it would be a violation of the Federal Rules of Evidence to put evidence of other lawsuits and other conduct of the Defendant into this case. Fed. R. Evid. 404(b). It is anticipated that the Plaintiff's attorneys may attempt to poison the jury against the Defendant by attempting to discuss other verdicts, settlements or settlement negotiations involving the Defendant in other cases. Such evidence and information of unrelated claims and lawsuits has no bearing on the disputed issues in this case. Fed. R. Evid. 401(b). Additionally, it would be more prejudicial than probative to allow this testimony to be entered into evidence. Fed. R. Evid. 403. Further, pursuant to Fed. R. Evid. 404, evidence used to show

conformity with a particular behavior trait is inadmissible. Therefore, the only purpose for attempting to introduce evidence of other lawsuits or claims against any Defendant is to inflame the jury on issues which are not related or probative to matters in this case. Defendant respectfully urges this Court to enter an order prohibiting the use of any such evidence.

### 16. Testimony regarding proposed use of settlement or verdict funds

It is irrelevant what Plaintiff may intend to do with any settlement or judgment funds received. Under Fed. R. Evid. 402, "Irrelevant evidence is not admissible." Furthermore, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of **unfair prejudice**, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise. Fed. R. Evid. 403. This information has nothing to do with the claims that have been made in this case are irrelevant in this matter. Accordingly, any such evidence should be excluded.

### 17. "Reptile Theory" and "Golden Rule"

A litigant's right to a fair trial "is a substantial constitutional right" guaranteed by the Due Process Clause of the Fourteenth Amendment. *Taliaferro v. Shahsavari*, 2006 OK 96, ¶ 2 and n. 39, 154 P. 3d 1240. A touchstone of this right "is an impartial trier of fact -- 'a ury capable and willing to decide the case solely on the evidence before it.'" *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 554, 104 S. Ct. 845, 849, 78 L. Ed. 2d 663 (1984) (quoting *Smith v. Phillips*, 455 U.S. 209, 217, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982)). It is the trial court's "duty to safeguard" this right. *Barnhart v. International Harvester Co.*, 1968 OK 49, ¶ 21, 441 P. 2d 1000, 1004. As the Oklahoma Supreme Court recognized over one hundred years ago:

> A resort to law is usually at the unsuccessful conclusion of all other efforts
> for adjustment, and all parties confidently appeal to the courts with the

abiding conviction that they are right and that justice will be administered unpolluted and exact. It is essential to the well being of society that this confidence be encouraged and sustained and that the faith of the people in the courts be not shattered. In order that this may be so, the jury, the trial and all the proceedings connected with them should not only be free of wrongdoing, but their administration should be so untainted, free, clear and above board that there will be no room for suspicion that the conclusion reached was influenced by other matters than an unbiased consideration of the law and the evidence, and this considered and applied by an honest, upright judge and jury. The fair and impartial jury, duly empaneled, sworn and charged to try the cause and true deliverance make, has been the bulwark of the best system yet devised by man for the determination of controverted questions of fact, and our people are content and feel secure in their persons and property because of their abiding confidence in its integrity. When the unfortunate parties, then, unable to settle their own differences, leave them to the judgment of a court and jury, the result should come to them both untainted by a breath of suspicion that aught else than the law of the land and their evidence was even remotely responsible for the verdict.

*Garvin v. Harrell*, 1910 OK 329, 113 P. 186, 189.

The right to a fair trial encompasses a jury free of prejudice and partiality - a jury unmoved by "undue influence." *Id. See also Davis v. Sams*, 1975 OK 157, ¶ 6, 542 P. 2d 943, 944; *Barnhart*, at ¶ 22, 441 P. 2d at 1004. The right of a litigant to such impartial and unbiased jury is not something that may be loosely scrutinized as "a procedural matter to be determined by statutory construction." *United States v. Chapman*, 158 F. 2d 417, 419 (10th Cir. 1946). Rather, "[i]t is one of vital substantive law under the Constitution, to be resolved according to the highest standards of human conduct." *Id. See also Ridley v. Harrison*, 1987 OK CIV APP 75, ¶ 7, 750 P. 2d 1143, 1144. Of the various means by which the right to a fair trial by an impartial jury is threatened, two may be anticipated in this matter - "Golden Rule" and "Reptile Theory." Each one of these approaches is sufficient in itself to transgress Defendant's constitutional right to a fair trial. As such, the Defendant requests an order *in limine* to preclude any argument/questioning falling under the "Golden Rule" and "Reptile Theory" approaches.

***"Golden Rule" Argument***

17

The purpose of "Golden Rule" argument is to have the jurors place themselves in the shoes of a plaintiff - i.e. "'do unto him as they would have him do unto them.'" *Moody v. Ford Motor Co.*, 506 F. Supp. 2d 823, 836 (N.D. Okla. 2007) (quoting *Stokes v. Delcambre*, 710 F. 2d 1120, 1128 (5th Cir. 1983)). Such argument "'is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.'" *Blevins v. Cessna Aircraft Co.*, 728 F. 2d 1576, 1580 (10th Cir. 1984) (quoting *Ivy v. Security Barge Lines, Inc.*, 585 F. 2d 732, 741 (5th Cir. 1978)). *See also Chicago, Rock Island & Pacific R.R. Co. v. American Airlines, Inc.*, 1965 OK 190, ¶ 7, 408 P. 2d 789, 791 ("Most courts which have had occasion to pass on such argument as this, where counsel asks the jurors to place themselves in the position of a litigant, hold that it is improper and constitutes reversible error."). Any argument and/or questioning by Plaintiff's counsel requesting the jurors place themselves in the shoes of Plaintiff should be barred.

### *"Reptile Theory" Argument*

The second type of argument anticipated to be advanced by Plaintiff at trial relates to the "Reptile Theory." This theory was conceived by Don Keenan, a plaintiff attorney, and David Ball, a jury consultant, using the work of a neuroscientist, Dr. Paul MacLean, from the 1960s. The focus of the theory is to appeal to the "reptile," or primitive, portions of jurors' brains "which will cause them to decide cases based on a subconscious desire to protect themselves and their loved ones from the danger posed by the allegedly negligent behavior of any defendant." *Wahlstrom v. Laz Parking, Ltd., LLC*, 2016 Mass. Super. LEXIS 120, *9-11 (Mass. Super. Ct. May 19, 2016). *See also Hensley v. Methodist Healthcare Hospitals*, 2015 U.S. Dist. LEXIS 113565, *13-14 (W.D. Tenn. August 27, 2015). The "Reptile Theory" approach seeks to replace

the more rational and reasoned brain functions in favor of more basic survival instincts to protect the safety of the community.

Questions or argument unrelated to the specific circumstances of this matter and tailored solely to appeal to the jurors' protective instincts are improper. Under such approach, it would matter not that Turn Key or its employees' actions did not otherwise proximately cause the alleged injuries, but, under the Reptile approach, Turn Key and its employees were allegedly not being safety conscious and, thus, the jury should protect its community and punish Defendant. An order *in limine* should be entered precluding such anticipated "Reptile Theory" questions. *See Pracht v. Saga Freight Logistics, LLC*, 2015 U.S. Dist. LEXIS 149775, *4 (W.D. N.C. October 30, 2015); *Hensley, supra*.

### 18. "Banter" or Discussion Between Counsel During Depositions

Throughout the normal course of this litigation, spirited exchanges of banter have occurred between counsel during deposition. Exchanges that occurred between defense counsel and Plaintiff's counsel during depositions are not relevant to this lawsuit and are, therefore, inadmissible.

### 19. References to Any Witness That Was Not Called to Testify

In this connection, Defendant moves that Plaintiff's counsel be instructed not to tender, read from, or refer to any *ex parte* statement or report (other than an admitted exhibit) of any person not being called to testify and be cross-examined by Defendant's Counsel. Defendant further requests that Plaintiff's counsel be instructed not to suggest to the jury by argument or otherwise what would have been the testimony of any witness not actually called or imply that there is some basis for the Defendant electing not to call a witness. Fed. R. Evid. 801-807. A party may not deem it necessary to call to testify at trial every witness equally available to both

parties in this lawsuit. Forcing a party to call every such witness to testify in order to avert speculative comments would unnecessarily prolong the trial. Further, comments as to why any such person was not called to testify would require the jury to speculate as to what that witness' testimony might or might not be.

20. **References to these Motions in Limine**

Defendant respectfully urges this Court to grant its Motion in *Limine* prohibiting all Parties and witnesses from making reference to the filing of Motions in *Limine* or to any ruling by this Court in response to the Motions, as such references are inherently prejudicial in that they suggest or infer that the movant has sought to prohibit proof or that the Court has excluded proof on certain matters. Motions in *Limine* are a proper method by which a party may seek the Court's assistance to prevent the other parties form asking prejudicial questions and introducing prejudicial information. As this information would be unfairly prejudicial, the filing of motions and rulings by this Court are not appropriate evidence in this case.

Respectfully submitted,

*/s/ Austin Young*
SEAN P. SNIDER, OBA # 22307
AUSTIN J. YOUNG, OBA # 32684
JOHNSON HANAN AND VOSLER
9801 N. Broadway Extension
Oklahoma City, OK 73114
Telephone: (405) 232-6100
Facsimile: (405) 232-6105
E-Mail: ssnider@johnsonhanan.com
E-Mail: ayoung@johnsonhanan.com
*Attorney for Defendant Turn Key Health Clinics, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the **17th day of December, 2021**, a true and correct copy of the above and foregoing was electronically transmitted to the Clerk of this Court using the ECF System for filing and transmittal of a Notice of Electronic Filing and to all ECF registrants who have appeared in this case.

*/s/ Austin J. Young*

Austin J. Young