## IN THE NORTHERN DISTRICT OF OKLAHOMA
## UNITED STATES OF AMERICA

PHILIP SANDERS, an Individual
and Husband and Next of Kin of
BRENDA JEAN SANDERS,
Deceased,

        Plaintiff,

v.

TURN KEY HEALTH CLINICS, a
limited liability company.

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  17-cv-492-JED-FHM

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE

## TABLE OF AUTHORITIES

CODE & STATUTES                                                              PAGE

Fed. R. Evid. 801(d)(2)                                                         6

Fed. R. Evid. 803(4)                                                           7

Fed. R. Evid. 803(6)                                                           7

23 Okl. St. Ann. § 9.1(A)                                                      8

42 U.S.C. § 1983                                                              11

Fed. R. Civ. P. 26(b)(3)(B)                                                   16

12. O.S. § 3226(B)(3)(b)                                                       16

CASES

*Brammer-Hoelter v. Twin Peaks Charter Acad.*                                 13
602 F.3d 1175, 1189-90 (10th Cir. 2010)

*Burrage v. Harrell*                                                          18
537 F.2d 837, 839 (5th Cir. 1976)

*Crawford-El v. Britton*                                                      11
523 U.S. 574, 594, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998)

*Deghand v. Wal-Mart Stores, Inc.*                                           17
980 F. Supp. 1176, 1180 (D. Kan. 1997)

*Drenner v. United States*                                                    12
2021 U.S. Dist. LEXIS 221876, at *60-61 (N.D. Okla. Nov. 17, 2021)

*Har-Pen Truck Lines Inc. v. Mills*                                          18
378 F.2d 705, 714 (5th Cir. 1967)

*Hawthorne Partners v. AT & T Tech., Inc.*                                   17
831 F.Supp. 1398, 1400 (N.D. Ill. 1993)

*Hightower v. Heritage Acad. of Tulsa, Inc.*                                  9
2008 U.S. Dist. LEXIS 57078, at *3 (N.D. Okla. July 29, 2008)

*Hopkins v. City of Wilmington*                                              11
615 F. Supp. 1455, 1465 (D. Del. 1985)

*Jones v. Mercy Health Ctr., Inc.*                                                           11
2006 OK 83, ¶ 20, 155 P.3d 9, 15

*Karnes v. SCI Colo. Funeral Servs.*                                                          11
162 F.3d 1077, 1081 (10th Cir. 1998)

*Kikumura v. Osagie*                                                                          14
461 F.3d 1269, 1291 (10th Cir. 2006)

*Lucas v. Turn Key Health Clinics, LLC*                                                       13
2021 U.S. Dist. LEXIS 234906, at *16 (N.D. Okla. Dec. 8, 2021)

*McKellips v. St. Francis Hosp., Inc.*                                                        11
1987 OK 69, P22, 741 P.2d, 467, 474

*Moody v. Ford Motor Co.*                                                                     10
506 F.Supp. 2d 823, 837-38 (N.D. Okla. 2007)

*Okla. ex rel. Edmondson v. Tyson Foods, Inc.*                                                8
2009 U.S. Dist. LEXIS 133534, at *53 (N.D. Okla. Mar. 13, 2009).

*Shultz v. Rice*                                                                              18
809 F.2d 643, 651-652 (10th Cir 1986)

*Skaggs v. J.H. Rose Truck Line Inc.*                                                         18
435 F.2d 695 (5th Cir. 1970)

*Smith v. U.S. Gypsum Co.*                                                                    9
1980 OK 33, 612 P.2d 251, 255 (Okla. 1980)

*Spaeth v. Union Oil Co. of California*                                                       9
710 F.2d1455, 1460 (10th Cir. 1983)

*Stokes v. Delcambre*                                                                         18
710 F.2d 1120, 1128 (5th Cir. 1983).

*Turner v. United States*                                                                     12
2018 U.S. Dist. LEXIS 33132, at *37 (N.D. Okla. Mar. 1, 2018)

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE

COMES NOW Plaintiff, Philip Sanders as the personal representative of the Estate of Brenda Sanders, (hereinafter "Plaintiff"), and respectfully asks this Court for an Order in accordance with the following:

1. **Opinions and criticism grounded in negligence**

   a. **Defendant takes Dr. Lawrence's statements out of context.**

Dr. Lawrence, Plaintiff's expert, answered one specific question, out of a 200-page deposition and detailed expert report, which Defendant now attempts to use as their sole argument to make the whole case disappear. Also, Defendant completely fails to address and include the objection when it "quotes" from the testimony. Dr. Lawrence answered the question she was asked as following:

```
 6      Q.     Would it be more accurate to say that,
 7   in your opinion, Turn Key provided -- did not
 8   provide adequate care to --
 9             MR. RICHARDSON:  Objection to form.
10      Q.     (By Ms. Thompson)  -- Brenda Sanders
11   rather than no care?
12      A.     They provided negligent care.
13             MR. RICHARDSON:  Objection to form.
14             THE WITNESS:  They provided negligent
15   care rather than no care.
```

*See* Dr. Lawrence Dep., attached as Exhibit 1, 193:6-15.[1]  The Court would first have to rule that this testimony is admissible over the objection, which the Defense has not argued whatsoever in its Motion in Limine.

---

[1] Defendant did not even attach the testimony as an exhibit so that the Court could see the complete testimony.

Further, Plaintiff has claimed civil rights claims and state claims for negligence and wrongful death. These claims are not mutually exclusive; they can be brought together in harmony. Moreover, they both have different standards, as recognized by Defendant. Dr. Lawrence simply answered the question asked of her.

Also, Defendant again greatly misstates Dr. Lawrence's testimony. Defense states that Dr. Lawrence's position is that the medical care was "negligent at most". *See* Doc 195, p. 3. Nowhere does she state, nor does Defendant show that, Dr. Lawrence said the conduct as "negligent at most". Counsel for Defense asked if Turn Key provided inadequate care as opposed to no care at all. Defense asked a "1 or 2" question and is now arguing that because Dr. Lawrence chose only between the options she had, the Court must not allow her testimony but also dismiss the claims. Dr. Lawrence just answered the question ask by stating she would classify the treatment that *was* provided was negligent as opposed to no care at all during Brenda Sanders' entire stay in jail. Further, Dr. Lawrence's testimony is not limited to just her deposition that was taken by the Defendant. She also has an expert report, of which she will testify consistent with at trial, as shown by the next section.

Also, Dr. Lawrence stated in her expert report that Defendant was deliberately indifferent. Dr. Lawrence states:

- Altered mental status accompanied by severe diarrhea is a serious medical condition, and Turn Key was deliberately indifferent when it failed to provide any medical care to Mrs. Sanders for these problems.
- Turn Key was deliberately indifferent because it knew or should have known the seriousness of Mrs. Sanders' condition, and failed to provide any medical care whatsoever to identify and treat her problem.
- Turn Key was deliberately indifferent because it knew or should have known the failure to keep accurate, organized medical records posed a substantial risk to Mrs. Sanders' health.

2

*See* Exhibit 2, Dr. Lawrence's Expert Report.

Again, Defendant misleads the Court when it states that Dr. Lawrence's position is the medical care "was negligent at most".  *See* Doc. 195, p 2.  Never does Dr. Lawrence state that the medical treatment was "negligent at most", and Defendant never cites to anywhere Dr. Lawrence states that.

**b.  Dr. Lawrence's report establishes that Turn Key acted with Deliberate Indifference.**

Defendant argues that Dr. Lawrence's report, under what the Defense qualifies as the "negligence" section, that Dr. Lawrence then talks about Turn Key's policies.  Defendant states that "Plaintiff's own expert has conceded that any alleged deficiency in a Turn Key policy arises to negligence at most," when there is no statement in Dr. Lawrence's report that it is "negligence at most," as Plaintiff has stated in the section preceding.  Negligence is a standard below "deliberate indifference", and the report shows that it is *at least* negligence instead of "at most" negligence.  Again, Defendant is putting words in the mouth of Plaintiff's expert.

Defendant further quotes testimony from Dr. Lawrence's deposition in which she said that employees of Turn Key were negligent.  *Again*, negligence is a standard below deliberate indifference.  Turn Key and its employee's behavior, actions, and policies can be negligent and deliberate indifferent at the same time, which is identified by Plaintiff's claims that he brought both civil rights claims *and* state negligence claims.  Plaintiff further incorporates by reference his arguments in his Response for Motion for Summary Judgment, since this is the same argument that the Defense makes in its Motion for Summary Judgment.

Defendant requests that "Dr. Lawrence's specific criticisms listed in the negligence section of her expert report, should be prohibited for purposes of deliberate indifference." *See* Doc. 195,

p. 6.   This would necessarily require the Court to bifurcate claims, and there have been no arguments or authorities to show the Court that this would be appropriate.   Again, negligence can also be deliberate indifference, and all of these facts and opinions can be taken as a whole and given to a jury to decide.

### c.  Dr. Lawrence should be allowed to testify to all her opinions.

Defendant again argues that the statements that Dr. Lawrence made that some conduct or policy was "negligent" should be excluded from evidence on the civil rights claim.   The opinions offered by Dr. Lawrence must be taken in consideration as a whole, and again, just because conduct or a policy is negligent does not mean that the Defendant was not deliberately indifferent in its conduct.   As stated above in subsection (a), Dr. Lawrence does discuss how Defendant's behavior and policies are deliberately indifferent.   Again, Defendant attempts to take snippets of Dr. Lawrence's testimony to support its position without giving the full picture.   For these reasons, Dr. Lawrence should be allowed to testify to all her opinions.

### d.  Turn Key did not provide care to Brenda Sanders for her symptoms of the illnesses that eventually killed her.

Defendant's argument is that it provided some care so it cannot be liable for deliberate indifference and Dr. Lawrence cannot testify that it was deliberately indifferent.   However, the case law that Defendant cites has to do with providing care to the inmate for the specific ailment or condition that the plaintiff later took issue with in a lawsuit.   In this case, Turn Key provided **no care whatsoever** to the illnesses and/or the symptoms of the illnesses that ultimately killed Brenda Sanders.

Defendant toots its own horn in that it provided some care.   The care that it provided was as follows:

4

    a) Lice treatment;

    b) Eye drops;

    c) Passing out medications, although it should be pointed out that dates were missed on which she did not receive her medications.

*See* Brenda Sanders' Medical Records, attached hereto as Exhibit 3.  However, none of these are treat the illnesses that killed Brenda Sanders.  Turn Key wholly failed to address, care, or treat Brenda Sanders for sepsis, which killed her.  Turn Key provided **did not provide any care at all** her for the urinary tract infection that led to the sepsis that killed her despite her lethargy, delusion, confusion, incontinence, diarrhea, altered mental status, jaundice and yellowing of eyes, and other symptoms. *See* Exhibit 4 Dep. of Bailey Smalley, 14:18-16:21, 70:6-70:24; *See* Exhibit 5 Dep. of Lindsey Foster, 20:01-20:09, 25:24-26:06; Dr. Lawrence's Expert Report, Exhibit 2, p. 17; *See* Exhibit 6 Godwin Dep., 7:17-15:4, 23:24-24:10, 28:24-29:2;

If the case law were taken in the way that Defendant argues, then all providers in jails would have to do is hand out medications and treat for *at least something* even if it was something minor like a dry eye.  The providers could then say "well we treated for **her dry eye** so we cannot be held liable for **her sepsis for the infection we did not treat**."  This is not what the case law allows, nor does it comport with what is expected of a medical provider.

Dr. Lawrence's report and testimony should be allowed into testimony and evidence at trial.  Dr. Lawrence states that this deliberate indifference and total failure to diagnose and treat Brenda Sanders' diarrhea and altered mental status culminated in severe sepsis and multiorgan failure, ultimately leading to her death.

**2. The Creek County EMSA Narrative Report should not be excluded.**

The Defense wants to exclude the narrative report because it clearly goes against its

interest. It argues that it should be excluded on the basis that it is hearsay and doesn't fall under any exception.

The narrative is as follows:

> Hx- 56 yof has been becoming more confused, weak and has been having diarrhea for the past two weeks. UOA pt is laying supine in a bed, pt is very lethargic and breathing w/ purse lips w/ erratic respirations. Pt appears to have dry emesis on the side of her face. RN reports she does not know if the pt has vomited. RN states that she does not know the inmate, pt had been moved to the front of the jail a few days ago due to pt having constant diarrhea and they put her in a cell alone. An employee stated that the pt has been deteriorating for the past few weeks, describing pt as becoming more altered and as of today pt was unable to walk, pt was having poor food and fluid intake as well. RN reports that pt 02 saturation was low,  BP was low and pt's had wheezing and rales when she listened to her lungs this morning. RN has no medical hx on the pt and does not know if the pt takes any medications on a daily basis. Staff has requested that pt go to SJMC.

*See* Exhibit 7, Sanders000052.  Part of this states that "RN states that she does not know the inmate, pt had been moved to the front of the jail a few days ago due to pt having constant diarrhea and they put her in a cell alone.  An employee stated that the pt has been deteriorating for the past few weeks, describing pt as becoming more altered and as of today, pt was unable to walk . . . ." *Id*. Defendant argues that this should be kept out and that this was not their employee. The evidence in this case shows that Defendant is the only medical company that services the Creek County jail and the only ones wearing scrubs.  *See* Exhibit 8, Groom Dep., 38:08-38:19, 110:23011:25; Exhibit 9, Davis Dep., 52:16-53:04; Exhibit 10, Goatley Dep., 85:01-85:15; Exhibit 11, Green Dep., 201:23-202:11.

First, the record and/or the statements above are not hearsay.  The Federal Rules of Evidence clearly exclude "An Opposing Party's Statement" as hearsay. Fed. R. Evid. 801(d)(2). The statements are not excluded as hearsay if they are "offered against an opposing party" and meets one of five other criteria, one being "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." *Id*.  These statements mentioned in the report are: (1) by an employee of Defendant, (2) are offered against the Defendant, and (3) made while that employee was "within the scope of that relationship".  This statement is not hearsay and

should be admitted to the jury.  At the most, Defendant's arguments are one for determination by the jury as to the credibility of Defendant's stance versus the evidence.

Second, even if the Court deems this narrative as hearsay, the narrative falls under numerous exceptions.  First, this statement and record falls under "Statement Made for Medical Diagnosis or Treatment."  Fed. R. Evid. 803(4).  A statement falls under this exception if the statement: (A) "is made for – and is reasonably pertinent to – medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensation; their inception; or their general cause."  This is *exactly what this statement is*.  The statements in this record are: (1) made for treatment and diagnosis; and (2) describing Brenda Sanders' medical history, including her past and present symptoms and their inception.  This is the exact example of the exception to the hearsay rule, and it should be admitted.

Moreover, this record falls under "Records of a Regularly Conducted Activity." Fed. R. Evid. 803(6).  It states that a "record of an act, event, condition, opinion, or diagnosis" is excluded from the hearsay rule if five criteria are met, including: (1) record made at or near time by someone with knowledge, (2) record kept in the course of regularly conducted activity of business, (3) record was regular practice of that activity, (4) all shown by a custodian, and (5) defendant does not show it lacks trustworthiness. *Id.* The narrative fits all of these factors, and Defendant has not shown that these statements lack trustworthiness.  All of these factors can and will be shown at trial.

This record and these statements should be admitted into evidence and testimony at trial because they are not hearsay, and in the alternative, if they are hearsay they fit exact exceptions to the hearsay rule.

### 3.  The Possible Existence of Liability Insurance

7

No Objection as of now.  Premature.  Further, if the door is opened by Defendant, then Plaintiff can discuss freely.

**4.  The Financial Condition of the Defendant is admissible and should not be excluded.**

Plaintiff disagrees with Defendant's position, as Plaintiff should be allowed to introduce evidence of Defendant's financial status for the purposes of punitive damages.  The Northern District of Oklahoma has dealt with the issue of whether financial information of a defendant is relevant in determining punitive damages.  "Information concerning the defendants' finances is relevant in this case because it can be considered in determining punitive damages." *Okla. ex rel. Edmondson v. Tyson Foods, Inc*., No. 05-CV-329-GKF-PJC, 2009 U.S. Dist. LEXIS 133534, at *53 (N.D. Okla. Mar. 13, 2009).  Further, Oklahoma law states that juries can consider the following factors in determining punitive damages:

> 1. The seriousness of the hazard to the public arising from the defendant's misconduct;
> 2. *The profitability of the misconduct to the defendant*;
> 3. The duration of the misconduct and any concealment of it;
> 4. The degree of the defendant's awareness of the hazard and of its excessiveness;
> 5. The attitude and conduct of the defendant upon discovery of the misconduct or hazard
> 6. In the case of a defendant which is a corporation or other entity, the number and level of employees involved in causing or concealing the misconduct; and
> 7. *The financial condition of the defendant.*

23 Okl. St. Ann. § 9.1(A) (emphasis added).  In *Edmondson,* the Northern District Court went on to state that "[w]here punitive damages are properly pled, the 'wealth' of the defendant is a relevant area of inquiry because the purpose of punitive damages is to punish past conduct and deter similar conduct in the future and 'the degree of punishment or deterrence resulting from a judgment is to some extent in proportion to the means of the guilty person.'" *Okla. ex rel. Edmondson v. Tyson*

*Foods, Inc.*, No. 05-CV-329-GKF-PJC, 2009 U.S. Dist. LEXIS 133534, at *53 (N.D. Okla. Mar. 13, 2009) (citing *Restatement (Second) of Torts § 908 comment (e)* (1979)).   This Court has previously stated that "Oklahoma law permits evidence of net worth to be considered in determining punitive damages." *Id*. (Citing *Spaeth v. Union Oil Co. of California*, 710 F.2d1455, 1460 (10th Cir. 1983); *Smith v. U.S. Gypsum Co.*, 1980 OK 33, 612 P.2d 251, 255 (Okla. 1980)). This ruling also mentioned Magistrate McCarthy's holding in a 2002 Order when he allowed discovery into the defendant's net worth. *Id*.

Further, in 2008, Magistrate McCarthy ordered that, "[f]inancial records are discoverable when punitive damages are at issue." *Hightower v. Heritage Acad. of Tulsa, Inc.*, No. 07-CV-602-GKF-FHM, 2008 U.S. Dist. LEXIS 57078, at *3 (N.D. Okla. July 29, 2008).   There, Magistrate McCarthy permitted discovery into financials but limited discovery to balance sheet of 2008 and net worth for 2008. *Id*. Here, the issue of discovery of punitive damages has been before the Court. Plaintiff should be allowed to introduce evidence of Defendant's financial status for the purpose of punitive damages.

Further, as stated in the District Court's Opinion and Order on Plaintiff's Objection to the Magistrate regarding its ruling on discovery of punitive damages, Defendant has not filed a dispositive motion for the purposes of punitive damages. Thus, following the conclusion of the evidence at trial, the Court will have the discretion to instruct, or not, the jury on the issue of punitive damages. If the jury finds that punitive damages are warranted, Plaintiff is entitled, by statute, to introduce evidence of Defendant's financial condition. Defendant's limine request on this issue must be denied.

### 5.   Claims Dismissed during Summary Judgment

This issue is premature. Upon a ruling on Defendant's Motion for Summary Judgment, the

9

parties can address this issue, if necessary.

### 6. Hypothetical Questions

Defendant's request to exclude hypothetical questions is too broad and vague to address in a motion. The Court should reserve any ruling on admission of evidence or an objection upon the issue being raised at trial.

### 7. Using a Verdict to "Send a Message"

Plaintiff can state or imply, by any means, to the jury that it may send a message using this verdict. The Court in the case that Defendant relies upon took all the facts before it into consideration when determining whether a "send a message" was improper. Further, that case also holds that a "send a message" type of argument is absolutely allowed in the punitive damages stage. *See Moody v. Ford Motor Co.*, 506 F.Supp. 2d 823, 837-38 (N.D. Okla. 2007). Further, Defendant has not filed any dispositive motion on punitive damages. Moreover, with a "standard" of "deliberate indifference," punitive damages will be an issue at trial for the jury's determination.

### 8. Testimony with regard to a code of silence

No objection at this time from Plaintiff other than premature.

### 9. Unrelated or other cases against the Defendant

Plaintiff is allowed to use other cases that have been against Defendant in establishing his civil rights claim. Other cases are one way that Plaintiff can establish a **custom** and **policy** of Defendant.

### 10. References to improper standards of care and/or causation

Defendant's request should be denied. To support its arguments, Defendant cites case law from Arizona, which has no bearing in Oklahoma and the 10th Circuit. Defendant also cites Federal Rule of Evidence 702, "Testimony by Expert Witnesses." This in no way supports Defendant's

position. The "standards" Defendant references are not the standards.

The burden of proof is preponderance of the evidence.  There is clear authority that federal courts consistently require plaintiffs to prove their § 1983 claims under the lower burden of proof--a preponderance of the evidence. *See, e.g., Crawford-El v. Britton*, 523 U.S. 574, 594, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998).  Additionally, a number of federal district courts have concluded that the preponderance of the evidence standard applies to punitive damages claims in civil rights actions. *Karnes v. SCI Colo. Funeral Servs.*, 162 F.3d 1077, 1081 (10th Cir. 1998); s*ee also Florez v. Delbovo*, 939 F. Supp. 1341, 1344-45 (N.D. Ill. 1996) (applying the preponderance standard to actions brought under 42 U.S.C. §§ 1981 and 1982); *Hopkins v. City of Wilmington*, 615 F. Supp. 1455, 1465 (D. Del. 1985) (concluding that, in a § 1983 claim, "punitive damages are recoverable only upon proof by a preponderance of the evidence that the defendant acted with ill will or reckless indifference to another's federally protected rights").  The standard of proof for Plaintiff in this case for liability and punitive damages is preponderance of the evidence.

Further, Oklahoma Courts have stated, "[w]e have rejected the notion, however, that an expert must speak certain 'magic words' before the issue of causation will be allowed to go to the jury." *Jones v. Mercy Health Ctr., Inc*., 2006 OK 83, ¶ 20, 155 P.3d 9, 15 (citing *McKellips v. St. Francis Hosp., Inc.*, 1987 OK 69, P22, 741 P.2d, 467, 474).  These standards of "reasonable degree of medical certainty" or "reasonable medical certainty", as Defendant knows, are not the standards. The Northern District of Oklahoma has stated the standard is as follows:

> To establish causation, a plaintiff must produce evidence that establishes a causal link between the negligence and his injuries and must persuade the trier of fact by a preponderance of the evidence that his injuries were caused by negligence. However, causation need not be established to a degree of absolute certainty, nor is the plaintiff required to establish causation to a specifically high level of probability. *McKellips v. St. Francis Hospital*, 1987 OK 69, 741 P.2d 467, 471 (Okla. 1987); *Robinson*, 154 P.2d at 1254. "A defendant whose conduct contributed

11

to cause a plaintiff's injury is liable for the injury even if his conduct was not sufficient by itself to cause the injury." ^., 2003 OK 16, 70 P.3d 811, 819, n. 24 (Okla. 2003).

*Drenner v. United States*, No. 15-CV-337-TCK-CDL, 2021 U.S. Dist. LEXIS 221876, at *60-61 (N.D. Okla. Nov. 17, 2021); *see also Turner v. United States*, No. 14-CV-671-JED-JFJ, 2018 U.S. Dist. LEXIS 33132, at *37 (N.D. Okla. Mar. 1, 2018).

Defendant wholly misstates the standard for causation as well.  This Court should reject Defendant's request.

### 11. Testimony or evidence regarding the Defendant no longer providing care at Creek County Jail

Plaintiff has no objection at this time, except that this request is premature. In the event the "door" is opened, Plaintiff should be able to introduce such evidence.

### 12. Criticisms not presented by expert testimony

Defendant's request is too broad and vague, and the Court should withhold any ruling until the issue is presented, if at all, at trial. Plaintiff is not limited to only what his expert states.  Further, Plaintiff refers to the arguments and case law above in response to Number 10 in regards to Defendant not citing the correct standard.

### 13. Plaintiff can bring in testimony regarding inadequate or absent training of Turn Key staff/employees.

Plaintiff is undoubtedly allowed to bring in this type of testimony and evidence into trial. Under a civil rights claim through a municipal theory, evidence of training, or lack thereof, is one of the ways that Plaintiff can show his cause of action for civil rights violation. Here, there exists considerable evidence of Defendant's failures regarding training its employees.

A municipal policy or custom may take the following forms: (1) a formal regulation or

12

policy statement; (2) an informal custom "amoun[ting] to 'a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a  custom or usage with the force of law"; (3) "the decisions of employees with final policymaking authority"; (4) "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval"; or (5) the "failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference to the injuries that may be caused.'" *Id.* (*citing Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)); *see also Lucas v. Turn Key Health Clinics, LLC*, No. 20-CV-601-TCK-CDL, 2021 U.S. Dist. LEXIS 234906, at *16 (N.D. Okla. Dec. 8, 2021).

Further, Plaintiff incorporates by reference his Response to Motion for Summary Judgment, which specifically identifies each individual employee of Turn Key.  Also, as supported by the testimony, their training was lacking.  *See* Ex. 8, Groom Dep., 17:5-17:23; Ex. 12, Cobb Dep., 16:11-17:21; Ex. 13, Ferris 9:24-10:23; Ex. 14, Davis 7:13-7:21; Ex. 11, Green Dep., 18:20-19:17.

Plaintiff should be allowed to introduce such evidence.

## 14. Testimony or evidence of negligence or indifference of healthcare providers not specifically named in this lawsuit

Plaintiff incorporates by reference his Response to Motion for Summary Judgment. Defendant argues that no evidence of employees of Turn Key should be admitted.  Plaintiff has identified all employees of Turn Key in its Response to Motion for Summary Judgment who have been deliberately indifferent and negligent.

13

First, Defendant argues that a plaintiff must allege specific actions and inactions of individuals and then join the individual into a lawsuit.  However, the cases the Defendant cite to are motions to dismiss.  The purpose is to so the defendant knows what parties are alleged to have done what.  Defendant did not bring this up in its motion to dismiss.  This is not a motion to dismiss; this is a motion for summary judgment.  Defendant fully knows now who did what or failed to do what, as discovery has been completed.

In proving that a medical provider exhibited "deliberate indifference to serious medical needs", the courts have laid out a two-part test made up of objective and subjective prongs. *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006).  "The objective component of the test is met if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id*. (citations omitted).  Further, to prevail on the subjective component, the prisoner must show that the defendant(s) "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Id*. at 1293 (citation and internal quotation marks omitted).

In this case, there are clear actions and omissions on the part of Defendant justifying Plaintiff's 1983 cause of action.  Brenda Sanders suffered from high blood pressure. *See* Ex. 3. Creek County Sheriff's Office notated on their Intake Medical Form that Brenda Sanders suffered from high blood pressure. *See* Ex. 3.  Nicholas Groom, an employee of Defendant, notated on the Medical Intake Form of Defendant that Brenda Sanders suffered from high blood pressure since 2011. *See* Ex. 3.  Further, Nicholas Groom also wrote down all the medication that Brenda Sanders takes, which includes her medication for regulating her blood pressure. *See* Ex. 3.  Defendant policies required that Brenda Sanders be placed on a chronic patient list and be "scheduled" and/or "referred", but the policies never actually state that such patient needs to be seen or within what

14

time frame such patient needs to be seen.  *See* Ex. 3.  Nicholas Groom, and other employees of Defendant that treated (or failed to treat), Brenda Sanders, including: Tamara Jackson, Cheryl Green, Lela Goatley, and Kerri Ferris. *See* Ex. 3.  None of these employees of Defendant ever allowed Brenda Sanders to see a medical provider.  As Dr. Lawrence states in her expert report, "[a]t no time during Mrs. Sanders' stay in the jail did she see a clinical provider (mid-level or physician)." *See* Ex. 2 and 3.

First, Plaintiff has to show the objective prong by exhibiting evidence that shows the harm suffered by Brenda Sanders is 'sufficiently serious'.  Brenda Sanders died.  This harm is sufficiently serious to implicate the Cruel and Unusual Punishment Clause.

Second, Plaintiff must show that employees of Defendant knew about the substantial risk of harm to Brenda Sanders and disregarded that risk, by failing to take reasonable measures to abate it.  These facts show that Nicholas Groom, an employee of Defendant, and all the other employees of Defendant, **knew** of Brenda Sanders' hypertension and need for medical attention. Through their training and experience in the medical field and schooling, they knew the risks associated and the kind of treatment or attention that a patient needs who has hypertension or high blood pressure (or history of).  Yet, still no employee of Defendant ensured that Brenda Sanders saw a medical provider.  All of these employees failed to take reasonable measures to abate the risks.

Plaintiff should be allowed to introduce such evidence and testimony.  These employees of Defendant were working on behalf of Defendant.

### 15. Testimony or evidence regarding settlement or verdicts in other cases

Plaintiff has no objection right now, but should the door be opened Plaintiff should be able to introduce competing evidence.

**16. Testimony regarding proposed use of settlement or verdict funds**

Plaintiff agrees.

**17. "Reptile Theory" and "Golden Rule"**

Simply put, Plaintiff is unclear what questions and arguments Defendants seek to preclude regarding "Reptile Theory" Argument.

Mandatory Continuing Legal Education is required by the Supreme Court of the State of Oklahoma and all other states. The Oklahoma Bar Association has approved many trial methods and trial strategy courses for MCLE credit, including courses in the Reptile© trial strategy. Trial strategies, the art of advocacy, and the science of persuasion are also taught in all three law schools in Oklahoma.  Oklahoma law prohibits a party from discovering the opposing party's trial strategies and theories in a particular case. Fed. R. Civ. P. 26(b)(3)(B) & 12. O.S. § 3226(B)(3)(b). To the extent that Defendants Response seeks to force Plaintiff to identify any trial strategy, such motion is improper.

Trial proceedings in Oklahoma, both State and Federal levels, are not governed by strategies or methods taught in law schools or MCLE courses. Instead, trial proceedings in Oklahoma are governed by the Federal Rules of Civil Procedure, the Oklahoma Common Law (as modified by the Oklahoma Constitution, statutory law, judicial decisions, and the wants of the people), and the Federal Rules of Evidence. Conduct of counsel during trial proceedings is governed by the Rules for District Courts and the Rules of Professional Conduct.  The proceedings at every trial in Oklahoma must conform with these rules, regardless of what trial strategy seminar either counsel have attended, or what trial strategy books they have read. The conduct of Plaintiff's counsel, and Plaintiff's evidence at trial, will follow the rules of Oklahoma and Federal law.

Defendant's level misplaced attacks on the "Reptile Theory."  First, motions in limine are

16

for a limited purpose—"[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial." Black's Law Dictionary (10th ed. 2009); accord *Deghand v. Wal-Mart Stores*, *Inc.*, 980 F. Supp. 1176, 1180 (D. Kan. 1997). Evidence is excluded on a motion in limine "only when [the] evidence is clearly inadmissible on all potential grounds." *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F.Supp. 1398, 1400 (N.D. Ill. 1993) ("Denial of a motion in limine…merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded"). Hence, it should be clear motions in limine are not intended to be used to limit trial strategy. Rather, motions in limine are designed to limit certain inadmissible evidence.

The admissibility of evidence is not based on what a trial consultant believes will influence a jury. Rather, the Rules of Evidence, statutes, and supporting case law are the guide. The defense bar also has its jury consultants, authors and organizations that teach techniques for trial. The Federation of Defense & Corporate Counsel and DRI publish articles and conduct seminars. They teach defense lawyers how jurors think and how to target those jurors who are susceptible to defense arguments. They teach how to identify in voir dire which jurors will favor the defendant and to target arguments at those jurors. Arguing against the "Reptile" on unfair prejudice or influence grounds is akin to attempting to prohibit a defense strategy crafted to show a plaintiff is malingering on the basis that the strategy is unfair.

Defendants' motion seeks to restrict how Plaintiff's counsel practices law, including how to handle the various phases of trial for this case, and control what phrases and/or arguments can and cannot be used by Plaintiff's counsel at trial. Defendants' argument in support of their Motion is based upon mischaracterizing a trial advocacy book titled Reptile: The 2009 Manual of the Plaintiff's Revolution. However, jury trials in Oklahoma are not governed by a trial advocacy

17

book. Jury trials are governed by the Federal Rules of Evidence, Rules of Civil Procedure, and the Model Rules of Professional Conduct.

The vast majority of the Defendants' Motion seeks in general to preclude the Plaintiff from using an undefined, ambiguous array of unspecified trial techniques labeled by Defendants as Reptile tactics. A motion in limine is "a pretrial request that certain inadmissible evidence not be referred to or offered at trial." Black's Law Dictionary, 8th edition, Garner 2004.

By definition, a motion in limine must address something "certain." The Defendants' Motion fails to meet this requirement. Moreover, the Defendants' understanding of what is or is not a reptile tactic is entirely subjective. It is arguable that any trial technique could be perceived by the Defendants as reptile tactics and it would be impossible for the Plaintiff to present her case in a way which would not violate the moving target of the Defendants' subjective concept of what may "appeal to the jurors' protective instincts."

Further, as it goes towards the golden rule argument, the law is that a Golden Rule argument is appropriate for liability, but not appropriate for damages. *Shultz v. Rice*, 809 F.2d 643, 651-652 (10th Cir 1986); *see also, Burrage v. Harrell,* 537 F.2d 837, 839 (5th Cir. 1976); *see, e.g., Skaggs v. J.H. Rose Truck Line Inc.,* 435 F.2d 695 (5th Cir. 1970); *Har-Pen Truck Lines Inc. v. Mills*, 378 F.2d 705, 714 (5th Cir. 1967)*; Stokes v. Delcambre,* 710 F.2d 1120, 1128 (5th Cir. 1983).

Defendants' motion must be denied.

### 18. "Banter" or Discussion Between Counsel During Depositions

Defendant's request is too broad and vague, and the Court should withhold any ruling until the issue is presented, if at all, at trial.

### 19. References to Any Witness That Was Not Called Testify

18

Defendant's request is too broad and vague, and the Court should withhold any ruling until the issue is presented, if at all, at trial. Further, as stated earlier in this Response, some of these out of court statements are not hearsay or are an exception to hearsay.  For example, the medical records are not hearsay.  The Court should make a ruling on an individual basis when the time comes.  Further, Defendant failed to specify any specific testimony making it impossible for Plaintiff to adequately respond.

**20. References to these Motions in Limine**

Plaintiff has no objections as of now.

Respectfully submitted,
**RICHARDSON RICHARDSON BOUDREAUX**

/s/ *Colton L. Richardson*
Charles L. Richardson, OBA# 13388
Colton L. Richardson, OBA# 33767
RICHARDSON RICHARDSON BOUDREAUX
7447 South Lewis Avenue, Ste. 300
Tulsa, Oklahoma 74136
*Attorneys for Plaintiff*

19

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on the 21st day of January 2022, I electronically submitted the attached document to the Clerk of Court using the ECF System for filing:

Austin Young
Johnson Hanan & Vosler
9801 N Broadway Ext
Oklahoma City, OK  73114

           */s/ Colton L. Richardson*  
           For the Firm